■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DOMINICK SEMINARA, Appellant.—Appeal by defendant (by permission) from an order of the County Court, Nassau County, entered October 8, 1976, which denied, without a hearing, his application to vacate, pursuant to CPL 440.10, a judgment of the same court, rendered July 21, 1975, which convicted him of grand larceny in the third degree, upon his plea of guilty, and sentenced him to an indeterminate term of imprisonment not to exceed three years. Order reversed, on the law, and proceeding remitted to the County Court for a hearing and a new determination in accordance herewith, to be held before a Judge other than the one who presided at the time the plea of guilty was accepted and sentence was imposed. The trial court erred in denying, without a hearing, defendant's motion to vacate the judgment pursuant to CPL 440.10. The appeal from the judgment, which was affirmed, concerned only matters in the record (*People v Seminara*, 53 AD2d 678). The issue on this appeal concerns matters dehors the record. Consequently, it was error to hold that the instant issue on appeal was raised and already resolved against the defendant on the appeal from the judgment. The court, in denying the motion, further erred in basing its decision on *People v Davidson* (35 NY2d 227). The *Davidson* case is clearly distinguishable since it involved a patently incredible allegation which was flatly contradicted by the record. Furthermore, in *Davidson,* the Judge who allegedly made the off-the-record promise was deceased at the time of the second *coram nobis* application. In the instant appeal the record does not contradict the allegation of an off-the-record promise; nor can it be said that the allegation is incredible as a matter of law. The dissenting opinion correctly sets forth the colloquy that transpired at the time that the defendant pleaded guilty. The dissent, however, in postulating the issue herein as merely being the effect to be accorded "the instant claim of a covert bargain between the Judge's law secretary and the defendant", completely disregards the following facts which clearly indicate that a promise of some kind was made by the court itself. In support of his application to vacate the judgment the defendant submitted an affidavit from his attorney, which stated that, prior to the defendant's pleading guilty, a conference was held in the office of the Judge's law secretary which was attended by the law secretary, an Assistant District Attorney, defendant's attorney and two attorneys who represented two codefendants; that the purpose of the meeting was to discuss disposition of the case; that he agreed to recommend a plea of guilty to a felony count on the condition that it be a *Serrano* plea and that a jail sentence not be imposed upon the defendant; that "It was at this point that the law secretary, Alvin Bucksbaum, made certain inquiries and then said that he saw no reason why Judge LaPera would impose a jail sentence in this case since it was not a crime of violence or a burglary, but arose out of business. Your affirmant expressed his satisfaction with this statement. Mr. Bucksbaum interjected that he could make no promises that the Judge would not impose a fine on the defendant, Dominick Seminara. This was agreeable to your affirmant and your affirmant promised to recommend acceptance of the felony plea"; that thereafter, on the date set for the taking of the plea, he and the attorney for a codefendant, "with permission, approached the Judge's bench and a conversation took place regarding prospective sentencing. His Honor stated that he would not say anything regarding it except commented that your affirmant and the attorney for Steven Lent had been sitting in the courtroom and had observed that first offenders were being sentenced to probation. Affirmant's client, Dominick Seminara, was a first offender. What had transpired was presented by your

affirmant to Dominick Seminara and he plead *[sic]* guilty to a felony with no admission of guilt"; that at a subsequent appearance before the court involving sentence the court was informed that restitution was contemplated; that the Judge promised probation if such restitution was made; that the defendant Seminara mortgaged his home and was prepared to pay one half of the amount of restitution agreed upon; that on the date of sentencing the defendant appeared in court and stated that he was prepared and able to pay his share of the restitution; that the codefendant Lent was unable to pay his share and, as a result, the court sentenced both defendants to an indeterminate term not to exceed three years. Also submitted in support of the defendant's motion was an affidavit executed by the attorney for the codefendant, Lent, which corroborated, in substance, the statments made by defendant's attorney. On January 13, 1975 the defendant pleaded guilty. On April 14, 1975 defendant and his attorney appeared in court and requested an adjournment, the attorney stating that he had been negotiating with the Attorney-General and also with the attorneys for the three banks that had sustained losses in an attempt to make restitution. The court granted the adjournment. On April 21, 1975 the parties appeared for sentencing but imposition of sentence was adjourned. On that day the following colloquy occurred between the court and Mr. Downs of the First National City Bank: "THE COURT: Well now, Mr. Downs, if monies were not paid to the banks and the banks did not tell the Probation Department that they had received certain monies from the defendants, I would take these into consideration, the payments into consideration in imposing my sentence. MR.DOWNS: Yes, sir. THE COURT: Because I had told counsel here, prior to the time when it was their idea that some monies would be paid to the three banks that were involved here, that I was about to send the defendants to jail. I have since that time told both counsel here that if they paid to the bank what the bank will accept, what the banks will accept. that I will not send them to jail, but I will place them on probation. * * * Without the payments to the bank I was about to send these two persons to jail. I will take that into consideration in imposing sentence, and so that counsel here will know what I expect to do on the day of sentence. If I receive the report by the Probation Department that the banks have received monies—by the way, how much monies?" The court then engaged in extensive colloquy with the attorney for the defendant as to how much money would be paid to the three banks and the Attorney-General. During this discussion the court stated: "So actually what the two defendants will be paying here is roughly $56,000." Further discussion ensued between the court and defendant's counsel as to the time when payment had to be made. The court stated: "No, I don't want it that way. I don't want it that way. I want all monies paid before I impose sentence." On July 21, 1975, prior to the imposition of sentence, defendant's attorney made an application to withdraw the defendant's plea of guilty which the court summarily denied. At that time defendant's attorney stated: "Now with regard to the contemplated restitution, your Honor also knows this. That as far as Dominick Seminara is concerned, he has been ready, willing and able in view of the fact that he's mortgaged his house to make his portion of the restitution. And accordingly I respectfully request that he be severed in this action from the joint defendant. "THE COURT: Denied." Before sentence was imposed, the codefendant Lent stated, in part, as follows: "This was a business venture that went bad. There was talk of restitution but since everything that has occurred, all the incidents that have occurred here have drained me financially, mentally, and I am just in no position at this point to make the kind of restitution that they are asking

for. We have both talked it over. We are willing to make some restitution to stay out of jail. But the kind of figures that they are talking about we just can't come up with." The court made no comment concerning defendant's attempt to make restitution but merely proceeded and imposed sentence upon him and his codefendant. There is sufficient evidence in the record to justify a hearing on the application for postjudgment relief. The questions to be determined at the hearing are what the full terms and conditions of the promise were and when the promise was made—before or after the defendant entered his plea of guilty. Furthermore, another question to be resolved at the hearing is whether at the meeting in the office of the Judge's law secretary held prior to the entry of the guilty plea for the purpose of discussing disposition of the case, attended by the Judge's law secretary, the Assistant District Attorney, defendant's counsel and the two lawyers representing the two codefendants, the Judge's law secretary purported to make a promise as to sentence, as agent for the Judge, as well as whether the court authorized him to make such promise. Under the circumstances of this case, a hearing is required in order to determine the validity of defendant's allegation of an off-the-record promise of probation (see *People v Picciotti,* 4 NY2d 340; *People v Weintraub,* 41 AD2d 660; *People v Barner,* 39 AD2d 985). The hearing should be conducted before a County Court Judge other than the one who presided at the time the plea of guilty was accepted and sentence was imposed (see *People v Edwards,* 53 AD2d 647; *People v Pendergrass,* 43 AD2d 592). Cohalan, Rabin and Mollen, JJ., concur; Martuscello, J. P., dissents and votes to affirm the order, with the following memorandum: Defendant and four codefendants were indicted in two indictments containing 31 counts charging grand larceny in the second degree, forgery, criminal possession of forged instruments, falsifying business records and conspiracy. After extensive plea bargaining, defendant was allowed to plead guilty to the lesser charge of grand larceny in the third degree in full satisfaction of all the charges against him; in consideration of such disposition all charges against two codefendants were dismissed upon motion of the prosecutor. This plea was entered on January 13, 1975, after the following colloquy occurred: "MR. BARRATA: Your Honor, we are prepared to accept the recommendation of the District Attorney's office * * * a disposition of the two pending indictments * * * for a plea to an E felony * * *. This plea on behalf of Dominick Seminara is intended to be within the framework of the *[Serrano]* decision * * * Dominick Seminara * * * has learned unhappily that he has a very serious physical ailment and [must] undergo a major surgical operation. It has been a tremendous stress on him, has created a mental depression which, according to his doctor, would mean a hazardous surgical attempt to do it with this particular matter pending * * * this case has been a tremendous financial burden. The necessary investigation and the attorney's fees have been burdensome to him. He has had to sell his house and relocate to smaller quarters with his wife and with his children. And it is for the reasons of bringing this matter to an end, and it has been a long time waiting for disposition or trial, my client is prepared to accept the offer and conclude the matter before you Honor. THE COURT: Dominick Seminara, do you now wish to withdraw your plea of not guilty heretofore entered to this indictment, that's Indictment No. 38889 and to now plead guilty to grand larceny in the third degree which is a Class E felony? DEFENDANT SEMINARA: Yes. THE COURT: And this plea will be taken in satisfaction of this indictment and Indictment No. 41414? DEFENDANT SEMINARA: Yes. THE COURT: Now are you doing this voluntarily and of your own free will? DEFENDANT SEMINARA: Yes. THE COURT: No one is forcing you

to take that plea, is that correct? DEFENDANT SEMINARA: right. THE COURT: I understand from your attorney that you are pleading guilty to this charge without admitting that you committed any crime, is that right, sir? DEFENDANT SEMINARA: That's correct. THE COURT: Do you realize that under the law, if you have committed no crime, then if you stood trial you might be acquitted? Do you understand that? DEFENDANT SEMINARA: Yes. THE COURT: So that you don't have to plead guilty to this charge. Do you understand that? DEFENDANT SEMINARA: Yes. THE COURT: But you are pleading guilty to this charge because you feel it is to your best interests, is that what you are telling us? DEFENDANT SEMINARA: Yes. THE COURT: Do you understand that no promises have been made either by me, the District Attorney or your attorney concerning sentence or punishment? DEFENDANT SEMINARA: Yes. THE COURT: Do you realize that as a result of this plea you could go to jail for up to four years? DEFENDANT SEMINARA: Yes. THE COURT: You have a right to a jury trial which you are waiving by taking this plea; do you understand that? DEFENDANT SEMINARA: Yes. THE COURT: And a plea of guilty is the same as if you were found guilty after trial. Do you understand that? DEFENDANT SEMINARA: Yes. THE COURT: Is anyone forcing you to take the plea? DEFENDANT SEMINARA: No, sir. THE COURT: Are you under the influence of any drugs or intoxicants? DEFENDANT SEMINARA: No, sir. THE COURT: Are you suffering from any physical or mental disability? DEFENDANT SEMINARA: Well suffering from a kidney ailment. But at the moment it is not affecting my decision. THE COURT: It hasn't affected your mental faculties, has it? DEFENDANT SEMINARA: No. THE COURT: Do you feel that it is to your best interests to plead guilty to grand larceny in the third degree? DEFENDANT SEMINARA: Yes. THE COURT: Did you have a full and complete discussion with your attorney? DEFENDANT SEMINARA: Yes. THE COURT: Are there any questions that you would like to ask your lawyer or the Court? DEFENDANT SEMINARA: No. THE COURT: Now do you realize that if I take this plea that at the time that sentence is to be imposed I will not permit you to withdraw your plea? You understand that? DEFENDANT SEMINARA: Yes. THE COURT: Since we are disposing both of your case and the case against all the other defendants. Do you understand that? DEFENDANT SEMINARA: Yes. THE COURT: And you are taking this plea with the full knowledge that you will not be permitted to withdraw your plea despite the fact that you might be innocent of any of the crimes charged in this indictment? Do you understand that? DEFENDANT SEMINARA: Yes. THE COURT: Do you still wish to plead guilty? DEFENDANT SEMINARA: Yes. THE COURT: Your plea is accepted. THE CLERK: Dominick Seminara, do you now wish to withdraw your previously entered plea of not guilty to Indictment No. 38889 and plead guilty to grand larceny in the third degree, a Class E felony, in satisfaction of this indictment and also in satisfaction of Indictment No. 41414? DEFENDANT SEMINARA: Yes. THE CLERK: How do you plead? DEFENDANT SEMINARA: Guilty." Before the sentencing on July 21, 1975 defendant orally moved to withdraw his plea. Upon denial of the motion defendant, by counsel, pleaded with the Judge to spare him from the rigors of incarceration because of his ill health. The indeterminate term of up to three years was imposed without any protest of a promise of probation. On the appeal taken from the judgment, defendant raised for the first time a claim that the guilty plea was made in reliance on a promise made by the law secretary to the Sentencing Judge. The secretary, speaking on behalf of the Judge, is alleged to have said that because of the defendant's background and the nature of the crime, which stemmed from a business venture, he would be placed on probation without a prison term. This court affirmed the conviction, noting that defendant's

claim was dehors the record and should be asserted by motion pursuant to CPL article 440. Upon exhausting his appellate remedies, defendant moved, pursuant to CPL 440.10, to vacate the judgment. Despite the clarity of the record, defendant insisted that the plea had been induced by representations of the Sentencing Judge's law secretary. Even with respect to this claim, defendant could not point to a firm pledge of leniency, but only to the law secretary's observation, that first offenders, particularly of nonviolent crimes, generally received light treatment. In denying the application, the County Court held: "The defendant * * * alleges that the sentence is invalid due to an off-the-record promise * * * which induced the defendant to plead guilty. * * * The defendant's motion would fail under the principles discussed in * * * *People v Selikoff*, 35 NY2d 227." This record hardly justified serious consideration of defendant's belated allegations of extrajudicial assurances of leniency. This plea clearly was predicated upon dismissal of the more serious charges in exchange for the lighter punishment which may be imposed for a class E felony. In proffering the plea, defendant emphatically asserted that there had been no promise of leniency. In accepting it, the court warned defendant of the possible term of imprisonment of up to four years. Under the plea accepted the court retained the discretionary power to impose sentence within the limits of law and left all of the defendant's hope for leniency squarely in the hands of the County Judge. Plea bargaining permits the doubt over the outcome of criminal litigation to be resolved at an early stage through a negotiated plea to a lesser offense *(People v Francis*, 38 NY2d 150). The solemnity of the finalized bargain, so essential to this pragmatic rule of judicial economy, bars a defendant who has accepted the benefits from avoiding the consequences *(North Carolina v Alford*, 400 US 25; *People v Dixon*, 29 NY2d 55; *People v Serrano*, 15 NY2d 304; *People v Mercado*, 50 AD2d 601; *People v Garrett*, 43 AD2d 503, affd 36 NY2d 727; *People v Borge*, 40 AD2d 552; *People v Jackson*, 32 AD2d 590). In return, the sentencing court is obliged to honor any commitments which it extended to the defendant or to allow defendant to withdraw his plea (cf. *Santobello v New York*, 404 US 257; *People v Selikoff*, 35 NY2d 227, *supra*). To accede to the instant claim of a covert bargain between the Judge's law secretary and the defendant would reduce the plea negotiation process to an idle ceremony or, as was stated in *People v Selikoff* (p 244): "But even if the averments [of an off-the-record promise] retained some 'scintilla' of credibility it would merit no judicial recognition because of its effect on the plea negotiation process. The desirability of encouraging exposure on the record of what has been said, what has been agreed, and what conditions exist before performance of a 'promise' may be relied upon, would be utterly negated." Certainly, the attempt to convert the secretary's alleged comment on the past sentencing practices into a firm pledge must fail on the merits in view of the silence of the defendant, not only at the very time the plea was entered unconditionally, but also at the time the sentence now challenged was imposed. " '*Silence* in the face of the court's trenchant statement in unmistakable terms of the precise basis of its approval * * * *must be construed as [a] representation that no other undisclosed term of agreement, different from the court's express understanding, existed*' " *(People v Selikoff*, 35 NY2d 227, 242, *supra;* emphasis supplied). Even assuming the validity of defendant's asserted reliance upon the law secretary's opinion, the instant application should nevertheless be denied. To intimate that the plea bargaining process could function effectively if mere intuition or speculation were to form the basis for the finding of an iron-clad agreement destroys the premises upon which plea bargaining operates. An informed

opinion may be helpful to the defendant in considering a plea. But to bind the courts to even the wisest extrajudicial speculation would wrest from the judicial function the power of sentencing and elevate to a role of overriding importance the subjective expectations of the defendant, left unarticulated and unexpressed at plea and sentencing (cf. *People v Cataldo,* 39 NY2d 578; *United States v Maggio,* 514 F2d 80; *Paradiso v United States,* 482 F2d 409; *Masciola v United States,* 469 F2d 1057). The interest of the judicial process in permitting the practice of plea bargaining undoubtedly rests in putting an end to litigation. To have acceded to this ploy to controvert an in-court acknowledgment on the lame assertion that the plea had been prompted not by a promise, pledge or assurance, but by a mere opinion, opens the courts to a deluge of questionable applications and creates the means to perpetuate and protract plea litigation unnecessarily. "A plea of guilty to a lesser crime, negotiated in good faith with the help of counsel, should signal the end of the criminal action, not the beginning [of the effort] to evade the agreement" *(People v Giuliano,* 52 AD2d 240, 247).