OPINION OF THE COURT
Meyer, J.
Is it an abuse of discretion for a Trial Judge, who believes that information learned during the trial of a codefendant warrants his doing so, to impose a 15-year sentence upon a defendant who pleads guilty to manslaughter, second degree, with the understanding that the maximum sentence imposed will be 10 years, where defendant has, as agreed in plea negotiations, testified before the Grand Jury, resulting in indictment of himself and his three codefendants, testified before the petit jury on the trial of one codefendant, resulting in conviction of that codefendant, and whose availability to testify against the other codefendants, the prosecutor agrees, was instrumental in their pleading guilty? We hold that under the circumstances of this case hereafter detailed, defendant is entitled to specific performance of the plea bargain. The order of the Appellate Division should, therefore, be reversed and the case remitted to Onondaga County Court for resentence to an indeterminate term with a maximum of 10 years in accordance with the defendant’s plea.
On July 19, 1976, defendant was an airman at an Air Force base, as were codefendants Carroll, Rock and Bridges and as was Ricky Hasman. Prior to that date none of the defendants had ever been involved in a crime. During the early morning hours of July 19, 1976 Airman Hasman was brutally beaten to death on a deserted road near the base, after a day during which, as the Trial Judge noted at defendant’s sentencing, McConnell, Carroll, Rock and Bridges drank heavily and there was "drug abuse from the rock concert to the orgy of the barracks to the site of later what was to be an execution on Dope Smoker’s Road”, following which "three people [defendant, Carroll and Hasman] went down that road from where *344 you were parked. Two stayed at the car. Three went down and only two returned.”
During the investigation which followed Hasman’s death, defendant McConnell’s attorney agreed with the Assistant District Attorney in charge of the matter that in exchange for McConnell’s testimony before the Grand Jury and in any subsequent judicial proceedings resulting from Hasman’s death, the prosecutor would accept a plea of guilty to one count of manslaughter in the second degree in satisfaction of all counts that might be brought against him in the forthcoming indictment and would recommend the imposition of sentence to an indeterminate term with a maximum of 10 years, even though manslaughter, second degree, was punishable by an indeterminate sentence with a maximum as high as 15 years. A conference then took place in chambers between the prosecutor, defense counsel and the County Judge during which the Judge stated that if defendant testified truthfully he would not consider a sentence with a greater maximum than 10 years.
Defendant McConnell appeared before the Grand Jury the next day, waived immunity and testified. As a result the Grand Jury returned indictments against him, Carroll, Rock and Bridges, defendant and Carroll being charged with murder, second degree, false imprisonment, first degree, and possession of a weapon in the fourth degree, and Rock and Bridges being charged with manslaughter, second degree, and false imprisonment, first degree.
Rock and Bridges chose not to go to trial as a result, according to the affidavit of the Assistant District Attorney in charge, of McConnell’s availability to the District Attorney as a witness against them. They pleaded guilty to criminally negligent homicide and each was sentenced to one year in prison. A few days before Carroll’s trial was to begin McConnell appeared before the County Judge. The prosecutor recounted the plea bargain previously discussed including the agreement that his office would recommend a sentence of 10 years maximum with no minimum in disposition of McConnell’s plea. The Judge acknowledged his recollection of the prior discussion and indicated his concurrence with the agreement. His statement on the record was "And based upon what I know of this at this point, unless something comes to my attention that changes it, in the Probation report I am inclined to agree with the recommendation of the District *345 Attorney’s office in this case.” During the course of taking defendant’s plea the Judge asked defendant to admit "that you recklessly caused the death of Ricky Hasman by punching, beating or kicking and in that manner eventually Mr. Hasman died” and, receiving an affirmative response, accepted McConnell’s plea to manslaughter, second degree, in satisfaction of the entire indictment against him.
A few days later defendant testified for the prosecution at the trial of defendant Carroll, over which the same County Judge presided. Carroll was found guilty of manslaughter, second degree, and ultimately was sentenced to an indeterminate term of not exceeding 15 years. When McConnell appeared for sentencing thereafter, the prosecutor recommended the agreed indeterminate term with a 10-year maximum. The County Judge, however, though stating explicitly that "There is nothing in that, that presentence report that I didn’t know”, refused to go along with the plea bargain and imposed a sentence of 15 years maximum. The basis of his refusal was that he had learned during the Carroll trial that McConnell "had stabbed the person” which he had not previously known and that "I agreed providing it was based upon what I knew at that time.” He acknowledged that McConnell had "put yourself in a position by testifying before the Grand Jury so that I can’t allow you to withdraw your plea because you have incriminated yourself’, but said that he felt compelled by his duty as a Judge not to follow the District Attorney’s recommendation. Defendant’s motion to vacate the sentence and for imposition of a 10-year maximum sentence was thereafter denied by the County Judge and that denial was unanimously affirmed by the Appellate Division in a memorandum which noted that it would vacate the sentence and permit withdrawal of the plea but that on oral argument defendant’s attorney had expressly stated that he did not seek such relief.
Defendant argues that he is entitled to specific performance of the plea bargain because he lived up to his agreement and the only reservation made by the County Judge was with respect to new matter brought to his attention in the probation report. While we agree with defendant’s conclusion, we do not accept his entire premise. In our view, defendant is entitled to specific performance because by living up to his part of the bargain defendant has put himself, as the County Judge acknowledged, in a no-return position and because the additional information which came to the Judge’s attention *346 after the bargain was struck was not of such a nature as to warrant refusal to go along with the bargain which defendant had fully performed.
The need for and policies behind the plea bargaining process are sufficiently detailed in our prior decisions in People v Frederick (45 NY2d 520) and People v Selikoff (35 NY2d 227) and the decisions of the United States Supreme Court to which those cases refer, and need not be again set forth here. Those decisions spell out the importance of a full record so that defendant will understand that he can rely on what is stated on the record, within the limitations stated, and cannot under any but the most unusual circumstances rely on anything not stated on the record no matter what discussion there has been. Selikoff also makes clear that contract law rules will not be applied to plea negotiations and that any sentence promise is conditioned, as a matter of law and of the strong public policy of rehabilitating offenders, protecting society, and deterring other potential offenders, upon the appropriateness of the sentence in the light of information subsequently received by the sentencing Judge from the presentence report or other reliable source. Finally, both Selikoff and Frederick establish that in most instances when a guilty plea has been induced by an unfulfilled promise either the plea must be vacated or the promise honored, but that the choice rests in the discretion of the sentencing court.
It is, however, a sound judicial discretion that is to be exercised by the sentencing Judge, who must take into consideration in making his determination the integrity of the criminal justice system in relation to the plea bargaining process as well as in relation to its protective, retributive, deterrent and rehabilitative aspects. This is because a defendant who pleads guilty waives a number of valuable constitutional rights in order to obtain reasonable assurance of certainty rather than gamble the possibility of a not guilty verdict against the heavier punishment, the greater anxiety and, in some cases at least, the greater expense, involved in a full trial. Obviously, to the extent that the assurance of certainty is diluted the bargaining process becomes less acceptable to defendants, to the detriment of the criminal justice system as a whole. Rarely, if ever, therefore, will it be permissible, as was done here, to refuse both to honor the promise and to vacate the plea taken. Thus, the Appellate Division was correct in offering to vacate defendant’s plea, but in our *347 view under the circumstances of this case that offer did not go far enough.
Defendant McConnell had, as the District Attorney recognized, lived up to his side of the bargain. By his testimony before the Grand Jury he made possible his own indictment and the indictment of his three codefendants, and was an important factor in both the guilty plea of two of the co-defendants and in the conviction after trial of the third. A defendant who has not similarly changed his position will generally be entitled to no more than the vacation of his plea if the court concludes that it cannot adhere to the promise given, for the simple reason that vacating the plea restores him to the same position he was in before the plea was taken or agreed to, so long as the prosecutor is not permitted to use the plea or statements made in relation to its acceptance as admissions.
Neither the plea nor any statement made in its acceptance will normally be as extensive an exposition of the facts and circumstances of a crime and of the defendant’s part in it as will be the testimony given before the Grand Jury and under examination and cross-examination during a resulting criminal trial. As the County Judge acknowledged, a defendant who has not only waived his right to trial but also his privilege against self incrimination and has testified extensively about the case cannot be similarly restored to status quo ante. To proscribe the prosecutor’s use of such a defendant’s testimony in a trial of the indictment against him cannot, with the possible exception of a case turning solely on defendant’s testimony, be a sufficient remedy against a prosecutor armed with the knowledge that such prior testimony will have given him (see Note, 11 Amer Crim L Rev 771, 793-794).
In Selikoff we recognized the possibility that specific performance of the promise might be the only alternative which in justice could be applied (35 NY2d, at p 239) and in Matter of Chaipis v State Liq. Auth. (44 NY2d 57), with respect to a defendant who, like McConnell in the present case, had testified before a "special” Grand Jury and before police department hearing boards about corruption in the police department, noted that "failure to enforce the promise might do substantial injustice, not only to the defendant but to the public which is entitled to have the benefit of future co-operation” (44 NY2d, at p 65), and that "in many instances, as in this case, merely vacating the plea would not make the *348 defendant whole again. Permitting defendant to proceed to trial is a satisfactory remedy when, by pleading guilty, the defendant has given up nothing but his right to trial. But where the defendant not only waives his right to trial, but performs other services for the prosecutor as well, services that involve considerable risk or sacriñce, merely undoing the plea is small compensation, if any.” (Ibid.; emphasis supplied.)
Chaipis involved a promise by a Special Prosecutor that defendant’s co-operation would be brought to the attention of the State Liquor Authority with a view towards preserving defendant’s liquor license despite his involvement in promoting prostitution. Notwithstanding the fact that the prosecutor had interceded on defendant’s behalf with the authority, the latter agency canceled the license without indicating, except perfunctorily, the consideration, if any, it had given to defendant’s co-operation. We reversed with directions to remand for reconsideration by the authority noting that while the final decision was to be made by it, both the Special Prosecutor and the authority were agents of the State and that the State had an obligation to fulfill its commitment, promise or representation, in the absence of sufficient countervailing reason (see, also, People v De Wolfe, 36 AD2d 618).
Defendant argues that the County Judge conditioned his concurrence only on what the probation report showed and could not impose a heavier sentence on the basis of information obtained outside that report. It is* however, the substance of the believable information received rather than the channel through which it comes to the court which should guide him in the decision whether to honor the promise. Here the case for specific performance is enhanced by the relative insignificance of the additional information which came to the County Judge’s attention. The justification advanced was that the Judge did not know McConnell had stabbed Hasman, but the sentencing minutes also show that the Judge had reviewed the trial minutes and found no testimony concerning any stab wound in Hasman’s back from which he concluded that McConnell missed. Use of a knife adds little to the heinousness of taking Hasman’s life by beating, punching or kicking, especially when one recalls that it followed an orgy of drink and drugs. The more so is that true if the fact was that McConnell thought he had used a knife but had not, or had in fact tried to do so but missed.
In holding McConnell entitled to specific performance of the *349 plea bargain, we do so as a matter of essential fairness, rather than as a matter of constitutional obligation, recognizing that a promise made by a State official authorized to do so and acted upon by a defendant in a criminal matter to his detriment is not lightly to be disregarded (see Westen & Westin, A Constitutional Law of Remedies for Broken Plea Bargains, 66 Cal L Rev 471, 512, 518-521, 536; Comment, 9 Conn L Rev 483, 493; Note, 13 Wake Forest L Rev 842, 846, 854; Note, 11 Amer Crim L Rev 771, 790-792). Of importance also is the detrimental effect on the criminal justice system that will result should it come to be believed that the State can renege on its plea bargains with impunity notwithstanding defendant’s performance. Finally to be noted is the fact that specific performance rather than vacation of the plea works to the benefit of the State in those cases in which the staleness of the indictment would make it difficult if not impossible for the prosecution to obtain a conviction (see People v Esposito, 32 NY2d 921, as explained in People v Selikoff, 35 NY2d 227, 239-240, supra; People v Parra, 57 AD2d 964; People v Johnson, 48 AD2d 643; People v Craig, 41 AD2d 932). If the State can hold a defendant to an agreed sentence rather than allow vacation of the plea when it would otherwise be prejudiced, a defendant in the converse position may be entitled to no less.
Accordingly, the order of the Appellate Division should be reversed and the casé remitted to Onondaga County Court for resentence to an indeterminate term with a maximum of 10 years in accordance with defendant’s plea.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order reversed, etc.