■ In the Matter of BENJAMIN S., Respondent. EDWARD J. KURIANSKY, as Deputy Attorney-General, Appellant. — Appeal by the Deputy Attorney-General for Medicaid Fraud Control, from so much of an order of the Supreme Court, Queens County (Balbach, J.), dated December 17, 1980, as, upon petitioner's motion to quash or modify a subpoena requiring his attendance before a Queens County Grand Jury, modified the subpoena so as to preclude the questioning of petitioner about facts discussed during his appearance before a New York County Grand Jury on March 13, 1979. Order affirmed insofar as appealed from, without costs or disbursements. On March 13, 1979, petitioner, a wholesale meat salesman, testified before a New York County Grand Jury which was conducting an investigation into alleged criminal activities in the health care industry in New York County. In his testimony petitioner denied any knowledge of persons in the meat industry having paid kickbacks to persons in the nursing home industry. Petitioner also denied that he had ever paid or discussed kickbacks. As a result of his testimony, he was indicted on three counts of perjury in the first degree, a class D felony. The prosecution was conducted by a Special Deputy Attorney-General assigned to the New York City regional office of the Hospital Division of the Deputy Attorney-General for Medicaid Fraud Control. Petitioner pleaded not guilty. Thereafter, he made several motions, including motions to dismiss the indictment in whole or in part. The Trial Judge denied petitioner's motions to dismiss, although he did remark that one of them involved "a very gray area". He did, however, grant petitioner's motion to suppress one of the tape recordings which was to be used as evidence of his perjury. According to one of petitioner's counsel, after the Trial Judge had made these rulings, he invited counsel into his chambers, indicated that he thought that the case was an "appropriate case for disposition", and asked counsel to return in a week with some sort of proposal with regard to disposition of the case. As a result of the ensuing negotiations triggered by the Trial Judge's request, petitioner pleaded guilty two months later to one count of perjury in the second degree, a class E felony, in full satisfaction of the indictment. He was sentenced to five years' probation and a fine of $2,500. This sentence was imposed in accordance with the Judge's promise that if petitioner pleaded guilty to a class E felony, he would receive probation and a fine. The Judge apparently arrived at this sentence upon his review of a prepleading report prepared by the probation department and without reference to any agreement by the parties concerning what they perceived to be an appropriate sentence. Before sentencing petitioner, the court noted that he was 61 years of age, had never had any prior

conflict with the law, had a "fine war record", and had led "what has appeared to be an exemplary life up to this point and time". About six months after petitioner had pleaded guilty, a Special Assistant Attorney-General assigned to the Long Island regional office of the hospital division, issued a subpoena to petitioner directing him to appear before a Queens County Grand Jury. According to the Special Assistant, that subpoena was issued because the Queens County Grand Jury had received information "different than the investigation in Manhattan" which had "grow[n] out of a separate matter". The Special Assistant did not recall discussing the issuance of this subpoena with any member of the New York City regional office. The Special Deputy Attorney-General who had prosecuted petitioner first learned of the subpoena from petitioner's counsel, after it had been issued. Petitioner moved to quash or modify the subpoena so as to limit the subject matter of his testimony to events that occurred in Queens County after the date of his testimony before the New York County Grand Jury.[1] The basis for the time limitation urged by petitioner was an alleged agreement that he had entered into with the Special Prosecutor's Office that, in return for his pleading guilty to a felony, he would not be required to give any information concerning matters which were the subject of inquiry during his appearance before the New York County Grand Jury. After conducting an evidentiary hearing (cf. *People v Seminara,* 58 AD2d 841), the hearing court concluded that petitioner had indeed entered into such an agreement and that he was entitled to have it enforced to the extent of having the subpoena modified to limit the subject matter of petitioner's testimony to his being "questioned about all relevant matters except those facts which were discussed during his prior appearance before the New York Grand Jury". This appeal by the Deputy Attorney-General followed. A defendant may not plead guilty to a lesser included offense of an offense charged in an indictment without the consent of the People (CPL 220.10). Accordingly, "[a] District Attorney may dictate the terms under which he will agree to consent to accept a guilty plea [to a lesser offense] and *** the withholding of such consent *** renders the court without authority to accept a plea to anything less than the entire indictment" *(Matter of Gribetz v Edelstein,* 66 AD2d 788). Moreover, "the statutory requirement of consent by the People to the acceptance of a reduced plea can hardly be obtained by estoppel against the District Attorney on the basis of his alleged negligence or indifference" *(Matter of Blumberg v Lennon,* 44 AD2d 769). It follows, then, that, at least under all but the most unusual circumstances, a prosecutor may not be held to any aspect of a plea bargain as to which he has not, in fact, given his consent. However, the law does not permit a prosecutor who consented to an aspect of a plea bargain to avoid its enforcement merely because, as here, the relevant portion of the plea bargain was neither in writing nor recited on the record during the plea proceedings, at least where the "off-the-record" promise is neither contradicted by the record of the plea proceedings nor legally impossible for the prosecutor to perform (see *Santobello v New York,* 404 US 257; *People v Seminara, supra;* cf. *People v Selikoff,* 35 NY2d 227, cert den 419 US 1122; *People v Campbell,* 35 NY2d 227, 241-242). Concluding that the Deputy Attorney-General, through the Special Deputy Attorney-General who prosecuted petitioner's case, did enter into a plea agreement under which, among other things, he agreed not to elicit further Grand Jury testimony from petitioner concerning matters discussed in his Grand Jury testimony on March 13, 1979, that such an agreement is neither contradicted by the record of the plea proceedings nor legally impossible for the Deputy Attorney-General to

---

1. Petitioner's motion was made in Queens County. A motion by the Deputy Attorney-General to change venue to New York County was denied and later withdrawn.

perform, and that there is no other reason for denying specific performance of the plea agreement, we affirm the order of Criminal Term insofar as appealed from. Petitioner's two defense counsel[2] testified at the evidentiary hearing, as did the Special Deputy Attorney-General who prosecuted petitioner. In their testimony, these witnesses all agreed that, under the plea bargain, the People consented to petitioner pleading guilty to a class E felony without his having to provide any information about illegal activities as a condition precedent thereto. However, the prosecutor testified that this was the full extent of the agreement. Indeed, he testified that he had specifically told one of petitioner's counsel that the plea bargain did not prevent petitioner's being recalled to testify for a second time before the Grand Jury. In contrast, petitioner's counsel both testified that the specific topic of future Grand Jury testimony by petitioner had never been discussed with the prosecutor. According to the testimony of one of them, which was supported by the testimony of petitioner's other attorney, the plea bargain provided that, as a result of petitioner's having agreed to plead to a felony, he would not be required to "give information", "talk about" or "be questioned about" the matters covered in his perjury indictment. To petitioner's counsel this bargain barred any future Grand Jury testimony by petitioner concerning such matters. According to them, their client's primary concern throughout the plea negotiations had been to insure that he would be shielded from having to give any information, whether before a Grand Jury or otherwise, concerning his dealings with customers and others in the health care industry. This concern arose from petitioner's fear that if it ever became known that he had given such information he would be unable to continue to work as a commission meat salesman, his sole occupation for at least the preceding 18 years. Thus, petitioner's counsel portrayed the plea bargain, in essence, as one in which petitioner, who had no prior criminal record, and a good reputation, agreed to forego a possibly successful defense to the prosecution and to accept the ignominy of a felony conviction in return for being permitted to avoid giving information by which he would severely jeopardize his livelihood. In this regard, there was testimony, corroborated for the most part by the prosecutor, that the prosecutor had rejected petitioner's offer to plead guilty to a misdemeanor conditioned upon his not giving any information to the prosecutor's office, insisting upon a plea to a felony in that event. To petitioner's counsel the essential aspect of the plea bargain, that petitioner be shielded from, *inter alia,* giving future Grand Jury testimony with respect to the matters covered in his prior testimony, was so well understood by counsel and the court that there was no need to spell it out during the plea proceedings. Based on the evidence adduced at the hearing, Criminal Term reached the following conclusions concerning the nature of the plea bargain which had been made: "An analysis of the evidence shows no definite promise by the state regarding Grand Jury appearances. Yet the record does establish that the issue was a central theme in all negotiations and discussed frequently. Certainly the special prosecutor is not under any duty to resolve every issue raised during plea discussions. Some matters are minor or beyond the normal scope of a sentencing court. Thus a state attorney may elect to remain silent or take no position on matters which he feels are immaterial to the proceedings (cf. *People v Jones,* 87 Misc 2d 931). However, once the prosecutor does enter into matters raised in plea negotiations and becomes aware that a defendant considers his answers to be representations and relies on such answers, then the state attorney is under an obligation to be precise in

---

**2.** The hearing court observed that petitioner's defense counsel were "well-known in their field, competent and highly respected" and had been practicing law for more than 30 years and almost 50 years, respectively.

his representations. If the state perceives that there is confusion about a specific matter vital to a defendant it is under a further duty to take reasonable steps to end that confusion. In the case at bar when the possibility of future Grand Jury appearances was raised the deputy attorney general gave equivocal answers which logically would have the effect of letting petitioner believe that he would have no grounds for worry in this respect. In addition, petitioner was represented by two experienced attorneys and it was their understanding also that the off-the-record representation was to the effect that their client would not be obliged to give further information before a New York Grand Jury. It is also clear that if the special prosecutor had expressed any doubts on the record as to whether or not the petitioner might have to appear before a Grand Jury, the plea bargaining session would have been different. This being the case, the court believes that the petitioner did enter into a plea bargaining agreement regarding his non-appearance before any further New York Grand Jury." Criminal Term then determined that "specific performance" of the plea bargain, to the extent indicated, was the appropriate remedy for the breach of that agreement. While we cannot agree with all the findings and conclusions of Criminal Term, we reach the same result that it did. Insofar as Criminal Term found that the specific issue of future Grand Jury appearances had been raised in the plea negotiations, such a finding has no support in the record and cannot be affirmed. As indicated, petitioner's own counsel testified that there had been no specific discussion of future Grand Jury appearances. Moreover, we disagree with Criminal Term to the extent that it concluded that, as a matter of law, under the circumstances of this case, the prosecutor might be held to an aspect of the plea bargain to which he did not actually consent because he made imprecise or equivocal statements during the plea negotiations. The mere fact that a defense attorney had been left with an "impression" that a particular promise had been made is not sufficient to give rise to an enforceable promise (see *People v Lazore,* 59 AD2d 635). In other words, as a general matter, short of a conclusion that a prosecutor knowingly consented to an aspect of a plea bargain, this court will not hold him to it (see *Matter of Gribetz v Edelstein,* 66 AD2d 788, *supra; Matter of Blumberg v Lennon,* 44 AD2d 769, *supra).* However, based upon both our review of the record and the findings of Criminal Term, including its implicit findings with respect to credibility of witnesses, we conclude that when the prosecutor indicated his assent that under the plea bargain petitioner would not be required by his office to "give information", "talk about" or "be questioned about" matters covered in his Grand Jury testimony, he thereby gave his knowing consent that petitioner was not to be called before a Grand Jury by his office to discuss those matters. In reaching this conclusion, we must emphasize that the promise alleged by petitioner is not contradicted by the record of the plea proceedings. If it were, then the promise could not be recognized for a defendant will not be heard to contend that an off-the-record promise was made to him to induce his guilty plea "when the minutes of the plea are unequivocal and refute any contention of an off-the-record promise" *(People v Frederick,* 45 NY2d 520, 526). However, the oft-posed question to a defendant whether any promises have been made to him other than those set forth on the record is conspicuously absent from the minutes of the plea proceedings in petitioner's case. Nor do those minutes or the sentence minutes contain anything else which refutes or contradicts petitioner's contention. Since petitioner's reliance upon an off-the-record promise may not be rejected on the ground that such a promise is at variance with the record (see *People v Seminara,* 58 AD2d 841, *supra),* the issue whether the prosecutor consented to a plea bargain which he understood to bar future Grand Jury testimony by petitioner with respect to matters discussed in his prior Grand Jury testimony

may properly be considered. The prosecutor testified that he stated to one of petitioner's counsel that the plea bargain did not prevent petitioner from being called to testify before a Grand Jury. Petitioner's counsel testified that no such statement had been made. If the prosecutor's testimony was credited, then the order would have to be reversed insofar as appealed from. However, in reaching the determination that it did, Criminal Term necessarily concluded that the testimony of petitioner's counsel was the more credible in this respect. Since Criminal Term had the advantage of seeing and hearing these witnesses and the testimony of neither of them was incredible as a matter of law, we defer to this factual conclusion by Criminal Term (see *Amend v Hurley,* 293 NY 587, 594; *People v Newson,* 68 AD2d 377, 386-387; *Rametta v Kazlo,* 68 AD2d 579; *Barnet v Cannizzaro,* 3 AD2d 745, 747). Our review of the remaining evidence in the record, accomplished with Criminal Term's determination of credibility in mind, convinces us that the result reached by the court was proper. Concededly, there was no evidence that there had been any specific statement by the prosecutor that the plea bargain would prohibit petitioner's being called to give Grand Jury testimony concerning the matters he had already discussed before the Grand Jury. However, there was evidence that the prosecutor had indicated his assent to petitioner's counsel's statements that, under the plea bargain, petitioner would not be required to "give information", "talk about" or "be questioned about" those matters. Any doubt concerning the meaning of these terms is resolved to our satisfaction upon reference to the admitted failure by the prosecutor, or anyone else in the regional office in which he was employed, to make any effort to call petitioner before the Grand Jury following entry of his guilty plea despite ample opportunity to do so. In an affirmation made in opposition to petitioner's omnibus motion, over two months before petitioner pleaded guilty, the prosecutor had stated that "[Petitioner's] truthful immunized testimony could have provided the Grand Jury with valuable insights into crime in the health care field". Moreover, at the plea proceedings, the prosecutor heard petitioner admit that he had given perjured testimony during his Grand Jury appearances. Since the prosecutor was of the view that petitioner could provide valuable testimony to the Grand Jury and knew that the testimony that petitioner had previously given was false, he had strong reason to recall petitioner before the Grand Jury. The prosecutor's failure to do so is powerful evidence that he understood the plea bargain to prevent him from doing so. Our conclusion concerning the agreed-upon meaning of the aspect of the plea bargain at issue is also buttressed by other uncontested facts reflected in the record. For example, it is noteworthy that at no time did the Judge who accepted petitioner's plea and sentenced him to probation indicate that either acceptance of the plea or imposition of a probationary term would be conditioned upon petitioner's giving truthful testimony before the Grand Jury. Moreover, under the objective circumstances of this case, we are of the view that it is unlikely that the prosecutor believed that petitioner's counsel were entering into a plea bargain under which the sole benefit to be provided to petitioner by the prosecutor's office was to permit him to plead guilty to a felony that was of one degree less severity than the crimes charged in the indictment without having to provide information as a condition precedent thereto. We reject the contention of the Deputy Attorney-General that, even if there was a promise which purported to shield petitioner from further Grand Jury testimony, such a promise may not be enforced because it is impossible for the Deputy Attorney-General to perform it without impermissibly infringing upon the right of the Grand Jury to gather evidence. As the Deputy Attorney-General contends, where a prosecutor promises that which he cannot legally perform, a defendant may not, as a matter of law, rely on that promise or be

entitled to its enforcement *(People v Selikoff,* 35 NY2d 227, 241, cert den 419 US 1122, *supra;* see *Matter of Chaipis v State Liq. Auth.,* 44 NY2d 57; but see *Palermo v Warden, Green Haven State Prison,* 545 F2d 286, 296). However, as this court and the petitioner interpret the promise in question, we believe that there is no legal bar to the Deputy Attorney-General's performance of it.[3] As stated in *People v Di Falco* (44 NY2d 482, 486-487): "During the actual proceedings, the legal advisor of the Grand Jury is the District Attorney and legal advice from any other source is improper (CPL 190.25, subd 6; see *Matter of Hynes v Moskowitz,* 44 NY2d 383). The District Attorney determines the competency of witnesses to testify (CPL 190.30, subd 5), and must instruct the jury on the legal significance of the evidence (CPL 190.30, subd 6). He, in effect, determines what witnesses to present to that body and who should be excluded. These duties and powers, bestowed upon the District Attorney by law, vest that official with substantial control over the Grand Jury proceedings, requiring the exercise of completely impartial judgment and discretion." We note that a District Attorney is authorized to seek to prohibit the Grand Jury from calling a witness where to do so would not be "in the public interest" (CPL 190.50, subd 3). However, we need not explore that issue because in this case, according to petitioner, his "limited position * * * is merely that prosecutor is barred by the plea agreement from questioning [petitioner] again as to the identical matters already covered in [his] prior grand jury appearance". CPL 190.50 sets forth the exclusive circumstances under which a person may be called as a witness in a Grand Jury proceeding. Pursuant to subdivision 2 thereof, the People "may", but are not required to, call any person believed by the District Attorney to possess relevant information or knowledge. A prosecutor, in performance of a valid plea bargain, may decline to call before the Grand Jury a witness whom he believes possesses relevant information or knowledge. Thus, we fail to perceive any legal bar to his agreeing not to ask certain questions in return for a defendant's pleading guilty. The Deputy Attorney-General contends finally that Criminal Term erred in granting petitioner "specific performance" of the plea agreement. He argues that where, as here, a defendant has given up only his right to proceed to trial on the indictment, the "normal" remedy upon a demonstrated breach of a plea agreement is to merely afford the defendant an opportunity to withdraw his guilty plea. We disagree. It has been said that "both *Selikoff* and *Frederick* establish that in most instances when a guilty plea has been induced by an unfulfilled promise either the plea must be vacated or the promise honored, but * * * the choice rests in the discretion of the sentencing court" *(People v McConnell,* 49 NY2d 340, 346). However, in *Selikoff, Frederick* and *McConnell,* the promise was made, or allegedly made, by the sentencing court. Here a legally enforceable, nondiscretionary promise was made by a prosecutor. Where such a promise has been breached, at least as a general matter, the minimum relief to which a defendant who has pleaded guilty in reliance upon that promise is entitled to its enforcement. Thus, it was said in *Santobello v New York* (404 US 257, 262, 263, *supra),* where the defendant had apparently not been prejudiced by the prosecutor's breach of the plea agreement: "This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant

3. We observe that a promise of this nature made by a prosecutor in the New York regional office of the Special Prosecutor is binding upon the Special Prosecutor's office as a whole, including the members of the Long Island regional office. "The staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or had done" *(Santobello v New York,* 404 US 257, 262, *supra).*

degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fullfilled * * * The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require *only* that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, *i.e.,* the opportunity to withdraw his plea of guilty" (emphasis supplied). Finding no reason in this case not to have the prosecutor's promise enforced, we affirm the order of Criminal Term insofar as appealed from.