Benjamin SIEGEL, Plaintiff-Appellee,

v.

STATE OF NEW YORK and Edward J. Kuriansky, Deputy New York Attorney General for Medicaid Fraud, Defendants-Appellants.

No. 1594, Docket 82–2204.

United States Court of Appeals, Second Circuit.

Argued Aug. 12, 1982.

Decided Oct. 22, 1982.

Certiorari Denied Feb. 22, 1983.
See 103 S.Ct. 1201.

Eleanor Jackson Piel, New York City (Harold I. Cammer, Robert Cammer, Cammer & Shapiro, P.C., New York City, of counsel), for plaintiff-appellee.

Arthur G. Weinstein, Sp. Asst. Atty. Gen., New York City (Richard D. Carruthers, Sp. Asst. Atty. Gen., Patricia A. Lind, Legal Intern, New York City, of counsel), for defendants-appellants.

Before VAN GRAAFEILAND, PIERCE and PRATT, Circuit Judges.

PIERCE, Circuit Judge:

This case presents the novel issue of whether federal due process requires a state prosecutor to fulfill an off-the-record promise made in plea bargaining negotiations,[1] despite New York State's announced policy of enforcing only those portions of a plea agreement which are actually placed on the record at the plea proceeding. The United States District Court for the Southern District of New York, Robert W. Sweet, Judge, found that such a promise must be enforced and, accordingly, enjoined the state prosecutor from breaching the promise. Because we find that New York State's policy of recognizing only on-the-record plea bargains comports with due process and because the plaintiff, in offering his plea, failed to place on the record the promise which he now seeks to enforce, we vacate the injunction and remand to the district court with an instruction to dismiss the complaint.

I

A. *State Court Proceedings*

Plaintiff-appellee, Benjamin Siegel, is a 63-year-old wholesale meat salesman. In March, 1979, Siegel testified before a New York County grand jury investigating alleged criminal activities in the nursing home industry. Siegel denied ever discussing or paying kickbacks to persons in the nursing home industry, and he denied any knowledge of other persons in the meat industry paying such kickbacks.

Following his testimony, Siegel was indicted in New York County on three counts of perjury in the first degree, a class D felony. Siegel entered a plea of not guilty. On November 21, 1979, Judge Aloysius Melia[2] denied Siegel's motion to dismiss the indictment and several other motions, and granted a motion to suppress one of the

tape recordings which was to be used as evidence. Judge Melia remarked that the case appeared suited to disposition by a negotiated guilty plea.

On January 21, 1980, in a reported hearing in open court, the prosecutor, a Special Deputy Attorney General assigned to the New York City regional office of the Hospital Division of the Deputy Attorney General for Medicaid Fraud, and the appellee and his counsel informed Judge Melia that Siegel was prepared to plead guilty to a single reduced count of perjury in the second degree, a class E felony, in exchange for dismissal of the other counts and the promise of a sentence of five years probation plus a fine. After ascertaining that Siegel was acting of his "own free will," that he understood the constitutional rights he was waiving by pleading guilty, and that he understood the sentence he would receive, Judge Melia accepted Siegel's guilty plea to a single count of perjury in the second degree and imposed a sentence of five years probation and a $2500 fine.

Six months later, on July 22, 1980, Long Island regional office of the Deputy Attorney General for Medicaid Fraud issued a subpoena to Siegel seeking to have him testify before a grand jury investigating kickbacks in the health care industry. Siegel moved in Queens County Supreme Court to quash the subpoena claiming that, at the time of the plea, the prosecutor had made an off-the-record promise that Siegel would not have to testify before the grand jury concerning the subject matter of his perjury indictment. Justice George Balbach, to whom the motion was assigned, conducted an extensive evidentiary hearing with regard to the circumstances surrounding the negotiation of Siegel's guilty plea. During this hearing Justice Balbach heard testimony from Siegel's two defense attorneys and from both the New York City and

---

1. Both the state trial court and the Appellate Division made factual findings, and concluded that a plea bargaining promise existed and should be enforced, each basing the result on different reasoning. *Matter of Benjamin S.*, 55 N.Y.2d 116, 118–20, 447 N.Y.S.2d 905, 432 N.E.2d 777 (1982).

2. Judge Melia was a Judge of the Criminal Court of the City of New York, sitting by designation in the Supreme Court, New York County.

the Long Island Special Deputy Attorneys General handling the case. By opinion dated December 17, 1980, Justice Balbach granted Siegel's motion to the extent of modifying the subpoena to preclude the prosecutor from questioning Siegel about "those facts which were discussed during his prior appearance before the New York County Grand Jury on March 13, 1979." *Matter of John Doe,* SP No. 4164, slip op. at 16 (Sup.Ct. Queens Co. Dec. 17, 1980). Although the trial judge found that the prosecutor made "no definite promise" concerning future grand jury appearances, the judge found that the prosecutor's equivocal responses during plea negotiations led Siegel to reasonably believe that he would not subsequently be obliged to testify before a New York State grand jury with respect to the subject matter of his previous New York County grand jury testimony.

In a memorandum opinion dated July 27, 1981, the Appellate Division, Second Department, affirmed. *Matter of Benjamin S.,* 83 A.D.2d 630, 441 N.Y.S.2d 698 (2d Dep't 1981). The appellate court found that there was no record support for the lower court's finding that the specific issue of future grand jury appearances had been raised in the plea negotiations. Nonetheless, the Appellate Division ruled that the prosecutor's statements to the effect that Siegel would not be required to "give information," "talk about," or "be questioned about" matters covered in his previous grand jury testimony constituted "knowing consent that [Siegel] was not to be called before a Grand Jury by [the prosecutor's] office to discuss those matters." 83 A.D.2d at 633, 441 N.Y.S.2d at 703. The Appellate Division also ruled that specific performance of the constructive plea bargain would not impermissibly infringe upon the right of the Queens County grand jury to gather evidence.

In a unanimous opinion dated February 18, 1982, the New York Court of Appeals reversed the Appellate Division's order. *Matter of Benjamin S.,* 55 N.Y.2d 116, 447 N.Y.S.2d 905, 432 N.E.2d 777, *reh'g denied,* 56 N.Y.2d 570, 450 N.Y.S.2d 186, 435 N.E.2d 403 (1982). The court ruled that the alleged promise concerning future grand jury appearances was unenforceable, as a matter of law, because it was not placed on the record at the time the guilty plea was entered.

Shortly thereafter, Siegel moved pursuant to N.Y.Crim.Proc.Law art. 440 (McKinney 1971) to reopen his plea proceedings and place on the record the alleged off-the-record promise or, in the alternative, for a vacatur of the judgment of conviction. In support of this motion Siegel contended that his plea of guilty and the conviction based thereon were procured by the prosecutor's misrepresentation concerning future grand jury appearances, in violation of his due process rights. By opinion and order dated March 5, 1982, the New York County Supreme Court, Trial Term, denied the motion, stating that the relief requested was essentially identical to the relief previously rejected by the New York Court of Appeals. Both the Appellate Division and the New York Court of Appeals denied leave to appeal.

## B. *Proceedings Below*

On May 13, 1982, Siegel filed a complaint in the Southern District of New York, alleging that his federal due process rights were violated when the prosecutor failed to fulfill his promise that Siegel would not be required to testify before the grand jury concerning his prior testimony. The complaint was founded on the federal habeas corpus statute, 28 U.S.C. § 2254, and the federal statute forbidding deprivation of constitutional rights under color of state law, 42 U.S.C. § 1983. Siegel sought either an order permitting him to withdraw his guilty plea or, alternatively, an order reopening the state plea proceedings and placing the alleged off-the-record promise on the record.

On May 17, 1982, Judge Sweet, upon plaintiff's application, signed an order directing the defendants-appellants, State of New York and Edward J. Kuriansky, Deputy New York Attorney General for Medicaid Fraud, to show cause why they should

not be preliminarily enjoined from requiring Siegel to be questioned concerning matters covered by his previous grand jury testimony. To accommodate the district court and opposing counsel, the State agreed that Siegel would not be called before the grand jury prior to June 16, 1982.

By opinion dated June 15, 1982, the district court granted Siegel's requested preliminary injunction. *Siegel v. State of New York,* No. 82 Civ. 3095 (S.D.N.Y. June 15, 1982). The district court did not apply this Circuit's settled preliminary injunction standard,[3] but fully discussed and finally determined the merits of Siegel's complaint. The court stated that "[t]he action of the Court of Appeals has served, in the view of this court, to deprive Siegel of his due process right to enforce his plea bargain and to challenge the voluntariness of his plea." It further stated that "[g]iven the resolution of the issue of the existence of an off-the-record agreement by the Appellate Division and its affirmance of the quashing of the subpoena by the Supreme Court, the writ of habeas corpus will be granted to enforce the plea bargain and to quash the subpoena." *Id.,* slip op. at 4. Because the district court has fully and finally adjudicated the claims raised in Siegel's complaint, we will review the decision as if it were a permanent, rather than a preliminary injunction. *See* Part IV *infra.*

## II

In *Santobello v. New York,* 404 U.S. 257, 260–61, 92 S.Ct. 495, 497–498, 30 L.Ed.2d 427 (1971), the Supreme Court endorsed the process of plea bargaining as not only an "essential" but also a "highly desirable" component of the administration of criminal justice which, if "[p]roperly administered, . . . is to be encouraged." Plea bargaining benefits both the accused and society because it leads to prompt and final disposition of cases; it avoids "the corrosive im-

pact of enforced idleness during pretrial confinement;" it protects the public from defendants who might commit additional crimes while released from jail before trial; and it enhances rehabilitative prospects by shortening the time between charge and disposition. *Id.* at 261; 92 S.Ct. at 498; *see Blackledge v. Allison,* 431 U.S. 63, 71, 97 S.Ct. 1621, 1627–1628, 52 L.Ed.2d 136 (1977). Because endorsement of plea bargaining "presuppose[s] fairness in securing agreement between an accused and a prosecutor," *Santobello, supra,* 404 U.S. at 261, 92 S.Ct. at 498, the Supreme Court requires the process to be attended by safeguards to insure the defendant what is reasonably due in the circumstances." *Id.* at 262, 92 S.Ct. at 499.

In 1974, the New York Court of Appeals began to move toward promulgating a rule barring enforcement of any promise made by the prosecutor to the defendant which was not contained in the record of the plea proceeding. *See People v. Selikoff,* 35 N.Y.2d 227, 360 N.Y.S.2d 623, 318 N.E.2d 784 (1974), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 806, 42 L.Ed.2d 822 (1975). In *Selikoff* the Court of Appeals jointly considered three cases. In one of those cases the Court rejected a claim that there had been an off-the-record promise that the sentence would not exceed four years, because the trial judge, on the record, had explicitly stated that the defendant would receive a sentence of three to ten years. 35 N.Y.2d at 244, 360 N.Y.S.2d 623, 318 N.E.2d 784. In one of the other cases, the court refused to enforce an off-the-record promise that the prosecutor would not object to defendant's motion to set aside the plea if a prison term was imposed where the defendant had stated on the record that there was no inducement other than the prosecutor's nonbinding promise to recommend no imprisonment. 35 N.Y.2d at 241–42, 360 N.Y.S.2d 623, 318 N.E.2d 784. At the close of his

---

**3.** For a preliminary injunction to issue in this Circuit, the plaintiff must show:
  (a) irreparable harm and (b) either
  (1) likelihood of success on the merits or
  (2) sufficiently serious questions going to the merits to make them a fair ground for litiga-

tion and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.
*Friarton Estates Corp. v. City of New York,* 681 F.2d 150, 152 n.2 (2d Cir. 1982).

opinion for an unanimous court, Chief Judge Breitel noted that in the future many problems attending plea bargaining could be eliminated by placing the entire agreement on the record and by the court refusing to recognize any other purported agreement except in "the most unusual circumstances." 35 N.Y.2d at 244, 360 N.Y. S.2d 623, 318 N.E.2d 784.

In *People v. Frederick,* 45 N.Y.2d 520, 410 N.Y.S.2d 555, 382 N.E.2d 1332 (1978), the trial court informed the defendant at the plea allocution that no promises were being made concerning the sentence to be imposed. The defendant acknowledged the trial court's statement and the court accepted his guilty plea. Eighteen months later, but prior to imposition of sentence, defendant's counsel alleged that at the time of the plea the court had promised the defendant off-the-record that it would allow the defendant to withdraw his plea if the sentence exceeded the prosecutor's recommendation. The trial court denied making such a statement and rejected defendant's motion to withdraw his guilty plea. Thereafter, having considered the prosecutor's recommendation of a term of probation, the court sentenced defendant to an indeterminate four year prison term. The Court of Appeals affirmed the conviction, stating that "[i]f the court had indeed assured defendant's counsel that it would follow the prosecution's sentence recommendation during an off-the-record bench conference, it was incumbent upon defendant's attorney to place that promise, in unmistakable terms, on the record." 45 N.Y.2d at 526, 410 N.Y.S.2d 555, 382 N.E.2d 1332. Like Chief Judge Breitel in *Selikoff,* Judge Jasen ended the unanimous *Frederick* opinion by stressing "the importance of placing the entire agreement reached by the parties through plea negotiations on the record." 45 N.Y.2d at 528, 410 N.Y.S.2d 555, 382 N.E.2d 1332. *Accord, People v. McConnell,* 49 N.Y.2d 340, 346, 425 N.Y.S.2d 794, 402 N.E.2d 133 (1980) (dicta); *People v. Da Forno,* 73 A.D.2d 893, 424 N.Y.S.2d 195 (1st Dep't 1980), *aff'd,* 53 N.Y.2d 1006, 442 N.Y. S.2d 476, 425 N.E.2d 864 (1981).

The New York Court of Appeals rule of *Selikoff* and *Frederick* is, in essence, a "statute of frauds" rule for plea bargaining: the courts, except in rare cases, will enforce only the bargain placed on the record at the time of the plea. Stated differently, with the exception of unusual cases, off-the-record promises made by the prosecutor or the court are a nullity and, accordingly, the defendant may not reasonably rely upon them; the defendant is entitled to rely only on recorded promises.

The foregoing New York state policy fulfills three important policy objectives. As detailed below, it increases the likelihood that factual guilt underlies a proffered plea of guilty; it enhances the integrity of the plea bargaining process; and it assures finality of convictions.

## A. *Enhancing Certainty of Guilt*

The procedural rights guaranteed to the accused by the United States Constitution reflect the high premium our nation places upon preventing innocent persons from being falsely or wrongly convicted. To protect the defendant from falsely accusing himself by pleading guilty, due process requires an affirmative showing that a guilty plea is intelligently and voluntarily entered. *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711–1712, 23 L.Ed.2d 274 (1969); *see Brady v. United States,* 397 U.S. 742, 758, 90 S.Ct. 1463, 1474, 25 L.Ed.2d 747 (1970).

With respect to pleas offered after negotiations and in reliance on inducements or promises, the possibility of false convictions is greater than with respect to non-induced pleas. The prosecutor may offer an innocent defendant an inducement so attractive that the defendant may perceive it to be in his self-interest to make a false confession of guilt. *See* Westen & Westin, *A Constitutional Law of Remedies for Broken Plea Bargains,* 66 Cal.L.Rev. 471, 493–98 (1978).

The New York rule, by recognizing as enforceable only those inducements that are placed on the record before the trial judge, gives the judge a more complete opportunity to determine whether the defendant's

plea is intelligently and voluntarily entered. Since the defendant in a New York court knows that his failure to place on the record promises upon which he has relied will result in non-enforcement of those promises, he and his counsel will be more likely to apprise the trial judge of the entire agreement. Consequently, there is a greater likelihood that the trial judge will be aware of the entire plea agreement when called upon to evaluate the voluntariness of the defendant's plea. Under these circumstances, the trial judge can more accurately determine whether the inducements offered are so attractive, when compared to the risk of proceeding to trial, as to override even an innocent person's decision to stand trial.[4] In other words, the New York rule, by requiring that the parties place the entire plea agreement on the record before the trial judge, allows the trial court a fuller opportunity to determine objectively whether the guilty plea is intelligently and voluntarily made, *i.e.*, by an independent review of the complete agreement, rather than by reliance solely upon the statements of the defendant who may, for various reasons, be inclined to conceal inducements from the court. The New York rule, then, enhances the court's ability to judge the voluntariness and intelligence of a defendant's decision to plead guilty, and, thereby, reduces the likelihood of false convictions.

### B. *Integrity of Process*

The New York rule requiring that plea bargains be fully disclosed on the record eliminates the "clandestine atmosphere" which previously attended the plea bargaining process. *See Frederick, supra,* 45 N.Y.2d at 526, 410 N.Y.S.2d 555, 382 N.E.2d 1332. The rule furthers the integrity of the process by requiring that the *entire* agreement be placed on the record and by treating off-the-record promises as void. The resulting enhancement of integrity and of the *appearance* of integrity is particularly

beneficial in light of the very high percentage of criminal cases in New York that are necessarily disposed of by plea rather than trial.

### C. *Finality*

The Supreme Court in *Blackledge, supra,* 431 U.S. at 71, 97 S.Ct. at 1627–1628, noted that "the chief virtues of the plea system—speed, economy, and finality"—are undercut by indiscriminate post-conviction proceedings. *See also id.* at 83–84, 97 S.Ct. at 1634 (Powell, J., concurring) (stressing the importance of finality to a system of justice). Because a defendant who complies with the New York rule is, in all but the rarest instances, unable to claim the benefit of a purported off-the-record promise following the acceptance of his plea, the rule serves to reduce the number of collateral attacks on convictions based on guilty pleas. Consequently, the New York rule promotes finality of judgments, and, thus, strengthens the efficacy of the plea process. The rule thus serves an important societal goal.

■ In view of the salutary policies fostered by the New York rule, we cannot conclude that it offends the constitutional concept of due process. To the contrary, the rule promotes openness, certainty, and finality of plea proceedings. Furthermore, assuming the defendant is aware that off-the-record promises by the prosecutor are void—not an unreasonable assumption given the defendant's right to counsel at the plea proceeding, *see Mempa v. Rhay,* 389 U.S. 128, 134, 88 S.Ct. 254, 256–257, 19 L.Ed.2d 336 (1967)—the memorialization in the record of all promises upon which he relies will best protect the defendant's post-conviction expectations.

### III

In the present case, Siegel claims that the off-the-record constructive bargain found by the Appellate Division should be honored

---

4. If the trial court found that the inducements were patently overwhelming, it could reject plaintiff's plea of guilty in the exercise of sound judicial discretion. *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498–499, 30

L.Ed.2d 427. A defendant possesses no absolute right to have a guilty plea accepted. *Id.* (citing *Lynch v. Overholser,* 369 U.S. 705, 719, 82 S.Ct. 1063, 1072, 8 L.Ed.2d 211 (1962)).

because the trial judge failed to inquire explicitly as to any inducements, aside from the promise of no imprisonment, upon which Siegel relied.

As previously stated, a trial judge is required to ascertain that a defendant's guilty plea is intelligently and voluntarily made before accepting it. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). According to *Boykin,* a case in which *no* questions were put to the defendant by the judge at the time he pleaded guilty, the thrust of the trial court's inquiry should be directed toward the defendant's waiver of his privilege against self-incrimination, his right to a jury trial, and his right to confront witnesses. *Id.* at 243, 89 S.Ct. at 1712. Neither *Boykin* nor any other Supreme Court or Second Circuit case that deals with due process requirements applicable to the states (as opposed to the specific requirements made applicable to federal criminal cases by Fed.R.Crim.P. 11) has held that a court must explicitly ask a defendant whether his guilty plea is entered as a result of any promises or inducements on the part of the prosecutor.[5] Rather than mandating a specific catechism, in determining voluntariness and intelligence, due process requires only that the courts provide safeguards sufficient "to insure the defendant what is reasonably due in the circumstances." *Santobello, supra,* 404 U.S. at 262, 92 S.Ct. at 498–499.

■ Here, the trial judge ascertained, through Siegel's affirmative responses to the court's questions, that Siegel understood the constitutional rights he was waiving by pleading guilty. Further, Siegel responded affirmatively to the court's inquiry: "Are you pleading guilty to this crime of your own free will?" The trial judge informed the appellee that he would sentence him to five years probation and impose a fine. Siegel then responded affirmatively to the trial court's question: "And do you understand everything that has happened here today?" Throughout the colloquy, Siegel and his two experienced attorneys made no mention on the record of the alleged agreement not to require testimony about the subject matter of his prior grand jury testimony, even though Siegel later asserted that the off-the-record promise was critical to his decision to plead guilty. In these circumstances, we conclude that the non-enforcement of the promise of the prosecutor does not deprive Siegel of due process.

Since in this case Siegel was represented by counsel throughout the plea bargaining process and the plea proceeding, and since both Siegel and his counsel had the opportunity to place the off-the-record promise on the record, as New York law requires, we find, on the facts of this case that due process was satisfied.[6] Siegel's claim that off-the-record promises were not considered unenforceable under prevailing New York law at the time of his plea, and that therefore his counsel could not have known of his burden to place on the record the promise upon which he relied, is without merit. As discussed above, *Selikoff* and *Frederick* —which were decided in 1974 and 1978, respectively—prior to Siegel's plea in January 1980—held that off-the-record promises would not be enforced where an inconsistent promise was on the record or where the defendant stated at the time he pleaded that no other promises had been made. In addition to their explicit holdings, both *Selikoff* and *Frederick* made it clear that, to be enforceable, a plea agreement normally had

---

**5.** Though *dicta* in *United States ex rel. Hill v. Ternullo,* 510 F.2d 844, 845 n.1 (2d Cir. 1975), suggests that *Boykin* imposed upon the states, as a matter of due process, the requirements of Fed.R.Crim.P. 11, the surrounding discussion in that case concerned only the waiver of constitutional rights, a matter with regard to which Siegel was properly informed.

**6.** Placing on the defendant and his competent counsel the burden of putting on the record all promises relied upon in offering the plea is consistent with the Supreme Court holdings that, in the context of federal collateral attacks, a plea is intelligently and voluntarily entered so long as it is based upon the advice of competent counsel, even if successful defenses to the charges existed. *Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

to be on the record. Indeed, *Frederick* expressly stated that the *defendant* had the burden of placing on the record promises upon which he relied and which he would seek to enforce in the future. 45 N.Y.2d at 526, 410 N.Y.S.2d 555, 382 N.E.2d 1332.[7] Thus, Siegel, through his counsel, knew, or should have known, at the time of the plea, that off-the-record promises were unenforceable, and therefore he should have undertaken to place his entire understanding of the plea bargain on the record for the trial judge's review—as well as possible appellate or collateral review.

In conclusion, because the promise relied upon by Siegel was not placed on the record and, hence, was a nullity at the time the plea was accepted, Siegel's reliance on that promise was unreasonable and is entitled to no recognition.[8] Non-recognition of this promise by the New York courts and the appellants did not violate federal due process since Siegel, through counsel, knew or should have known that the off-the-record promise was unenforceable. Accordingly, Siegel is neither entitled to vacatur of his plea nor specific performance of the off-the-record constructive agreement found by the Appellate Division.

IV

As stated at the end of Part I *supra,* although the district court's order was cast as a preliminary injunction, that court unequivocally adjudicated the merits of the complaint and entered what is in effect a permanent injunction. In *Almenares v. Wyman,* 453 F.2d 1075, 1088 (2d Cir. 1971), *cert. denied,* 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972), Judge Friendly treated a preliminary injunction as a permanent injunction, noting that—as is the case here —"there seems to be nothing preliminary about the order that was issued" and "[t]here was no suggestion that the parties return to the court with further evidence or argument which might lead to modification of the injunction." In this case, the district court rendered final relief and its order is properly considered a permanent injunction.

Since we have concluded that plaintiff-appellee is entitled to no relief on the allegations of his complaint, and the district judge has had an opportunity to fully address the merits of the complaint, we believe it is appropriate to direct final relief at this time. Accordingly, the injunction entered below is vacated and the action is remanded to the district court with instructions to dismiss the complaint and enter final judgment for defendants.

GEORGE C. PRATT, Circuit Judge, dissenting:

Desirable as it might be from the point of view of administering criminal cases in the state courts, I do not believe that the "statute of frauds" rule adopted by the New York State Court of Appeals and approved by the majority is permissible under *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), and *Blackledge v. Allison,* 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). Therefore, I respectfully dissent.

---

**7.** Predictably, the New York Court of Appeals in *Matter of Benjamin S.* held that the *Selikoff* and *Frederick* holdings applied where the defendant had *not* expressly stated that no other promises or inducements were made. 55 N.Y.2d at 120, 447 N.Y.S.2d 905, 432 N.E.2d 777.

Siegel contends that *Chaipis v. State Liquor Authority,* 44 N.Y.2d 57, 404 N.Y.S.2d 76, 375 N.E.2d 32 (1978), shows that the *Selikoff-Frederick* rule was not well established and thus could not have been reasonably known to his counsel at the time he pleaded guilty. This is not so. First, *Chaipis* predated *Frederick.* Further, it is not clear from the reported opin-

ion that the state's promise to bring the defendant's cooperation to the attention of the State Liquor Authority was on the record. In any event, in *Chaipis* the prosecutor had in fact informed the Liquor Authority of defendant's cooperation.

**8.** Because Siegel's purported reliance on the constructive promise found by the Appellate Division was unreasonable as a matter of law, the promise cannot "be said to be part of the inducement or consideration ... [which] must be fulfilled." *Santobello,* 404 U.S. at 262, 92 S.Ct. at 498–499.