OPINION OF THE COURT
Louis H. Mariani, J.
Defendant, Lonnie C. Singletary, was initially charged with two counts of the class B felony criminal sale of a controlled substance in the third degree, two counts of the class A misdemeanor criminal possession of a controlled substance in the seventh degree, two counts of the class E felony criminal possession of stolen property in the second degree, and a class A misdemeanor of resisting arrest. On July 28, 1981, having been incarcerated since June 17, 1981, defendant’s guilty pleas to two misdemeanors were accepted by then Syracuse City Court Judge James J. Fahey pursuant to a plea bargaining agreement in satisfaction of the above-mentioned charges. As articulated in the minutes of that proceeding, an agreed upon condition of the bargain between the parties was “that the Defendant receive a sentence of one year incarceration on each plea to be served consecutively making two years incarceration.” *1089 Sentencing was adjourned for a presentence report to be prepared.
On September 22, 1981, due to the unavailability of Judge Fahey, this court presided at the sentencing of the defendant. At that time, the plea bargaining agreement was reiterated, including the condition of sentencing being two consecutive years of incarceration. The court, in order to best exercise that discretion it alone is vested with, and seeking to ascertain all facts available, reviewed the presentence report, defendant’s lengthy criminal record, and heard the District Attorney, defense counsel, and the defendant himself. During this colloquy, the court was informed that the defendant had been sentenced on July 30, 1981, in Onondaga County Court for violation of probation stemming from the charges here before us. It also became known to the court that the defendant, despite his repeated involvements with the criminal justice system, had never been previously sentenced to incarceration and had been employed for some eight years at the same location. Most importantly in this court’s determination of an appropriate sentence were the facts that the defendant felt emotionally supported by his wife and child and that defendant’s potential for re-employment with his previous employer would be high should he not receive two consecutive year sentences.
Based upon the above and the essential criteria to be considered in the sentencing process (to wit: “the crime charged, the particular circumstances of the individual before the court and the purpose of a penal sanction, i.e., societal protection, rehabilitation and deterrence [see People v McConnell, 49 NY2d 340, 346; Penal Law, § 1.05, subd 5]” lPeople v Farrar, 52 NY2d 302, 305-306]), this court exercised its discretion to reach that “delicate balancing necessary to accommodate the public and private interests represented in the criminal process” (People v Farrar, supra, at p 306). Indeed, we found that “‘Utter economic and emotional destruction of a defendant and of his family would [not] * * * confer a benefit upon the community.’ ” (People v Dolkart, 60 AD2d 238, 241, citing People v Golden, 41 AD2d 242, 243-244.)
*1090 Accordingly, one-year incarceration was the sentence imposed.
In response to the District Attorney’s objections, this court responded, inter alia, “If the District Attorney’s Office is unhappy, they can move to take back their bargaining and start anew” and later “You can appeal my position on it.” At that time, the oral application of the District Attorney to vacate defendant’s guilty plea was refused by the court.
Some two months later and five months after defendant’s incarceration on June 17, 1981, the District Attorney moved this court, pursuant to CPL 440.40, for an order either (1) setting aside defendant’s sentence as invalid as a matter of law and demanding specific performance of the original plea agreement of two consecutive years in the Onondaga Correctional Penitentiary; or (2) vacating the judgment of conviction and reinstating the original charges.
That discretion to sentence rests solely with the court is well recognized. (Williams v New York, 337 US 241.) Similarly regarded is the principle that ‘a Sentencing Judge may exercise broad discretion in the sources and types of evidence used to assist him in deciding upon an appropriate sentence” (.People v Wright, 104 Misc 2d 911, 920; see, also, United States v Tucker, 404 US 443; United States v Grayson, 438 US 41; Gregg v United States, 394 US 489; Chaffin v Stynchombe, 412 US 17; CPL 390.30, subd 1; People v Selikoff, 35 NY2d 227; People v Farrar, supra). Given the wide range of sanctioned bases utilized by sentencing courts in the past, we reject the District Attorney’s contention that this court provided no valid reason for its deeming a sentence of two years’ incarceration inappropriate. In fact, documentation supplied by the defense in support of their opposition to this motion substantiates the court’s reliance on the defendant’s presentence statements, one of the factors utilized in reaching the sentence. “[A] Court * * * must be free to impose a lesser penalty if warranted.” (People v Farrar, supra, p 308.) To refuse to recognize this responsibility to society, thereby abdicating discretion in favor of a previously negotiated sentence, is *1091 error. (People v Monte, 80 AD2d 864; People v Best, 77 AD2d 836; People v Sumpter, 77 AD2d 834; People v Melendez, 75 AD2d 794; People v Maldonado, 70 AD2d 308.)[1]
Therefore, given this court’s express disagreement with the proposed sentencing of two years’ incarceration, to now set aside the sentence of one year imposed and resentence defendant to the longer period would be contrary to the Maldonado-Farrar policy and not a proper recourse in this case.
Turning to the alternative relief sought by the District Attorney, a vacation of defendant’s guilty pleas entered on June 28, 1981, and restoration of the original charges, we find ourselves in a difficult dilemma.
A statutory scheme is provided for the entering and/or withdrawing of guilty pleas. The Legislature specifically “require(s) the consent of the court and prosecutor to a plea to a lesser included offense or to less than the entire indictment (see CPL 220.10, subds 3, 4). Such a joint consent procedure prevents abuse (see People v Selikoff, 35 NY2d 227, 241, supra) and recognizes the prosecutor’s independent role”. (People v Farrar, supra, p 307.) Further, CPL 220.60 (subd 3) provides the vehicle whereby a defendant, prior to sentencing, may apply to the court’s discretion to permit withdrawal of a previously entered guilty plea. Given the waiver of fundamental due process rights,[2] that occurs with a guilty plea, courts consistently recognize a defendant’s right to withdraw that plea or seek enforcement of a promised sentence where that sentence was the inducement to plead guilty. (Santobello v New York, 404 *1092 US 257; People v Maldonado, supra; People v Frederick, 45 NY2d 520.)
In addition, the Legislature also provides the means for a defendant, postsentence, to apply to vacate a judgment of conviction and/or a sentence. Also provided in CPL article 440 is the means for the District Attorney to move to vacate a sentence. Absent from the statutory scheme, however, is a legislative grant to the prosecutor of a right to move to vacate a judgment of conviction.
The Appellate Division, First Department, developed the Maldonado rule (People v Maldonado, supra) expressly refuting a prosecutor’s ability to withdraw his agreement to a guilty plea absent defendant’s consent. (See, also, People v Selikoff, supra, at p 241.) However, the Court of Appeals, in People v Farrar (52 NY2d 302, supra) seems to have created such a right, although “heretofore unknown”. (People v Powell, 108 Misc 2d 610, 614.) “Where the record shows that the prosecutor’s consent to a plea is premised on a negotiated sentence and a lesser sentence is later deemed more appropriate, the People should be given the opportunity to withdraw their consent” (People v Farrar, supra, pp 307-308).
This “mirror-image” of a defendant’s right to apply to withdraw a plea has been limited to instruct a court to “entertain” the People’s application to withdraw consent. “[Tjhis is not to say that the People’s application must be granted in all cases, for, among other things, prejudice to a defendant following a plea may prevent restoration to status quo ante and render vacatur of the plea inappropriate (see People v McConnell, 49 NY2d 340, supra). Absent defendant’s showing of such prejudice or other circumstances militating against vacatur,. however, relief to the People would be proper.” (People v Farrar, supra, p 308; emphasis added.)
The Court of Appeals provided one specific occurrence precluding the prosecution from withdrawing consent to a plea, that of prejudice to the defendant pursuant to the McConnell rationale. Prejudice may also be shown in other ways or “other circumstances” may similarly militate against vacatur. We find that the totality of circumstances *1093 in this case favor our exercise of discretion to deny the People’s application. Among other things, defendant had already served five months in a secured facility[3] at the time of this motion, therefore, vacatur ignores a possibility of a not guilty verdict. Furthermore, given the relatively slight disparity between sentences, the purposes of incarceration and the particular circumstances of this defendant, the interests of justice encourage this response.
As stated above, the rationale for favoring defendant’s withdrawal of a guilty plea when a sentencing promise cannot be met is that fundamental rights will be otherwise ignored. Certainly the State cannot be deemed prejudiced in an equivalent manner should judicial discretion impose a less than agreed to (yet appropriate) sentence. In the instant prosecution, as in Santobello (supra, pp 268-269), the District Attorney has made no claims of prejudice other than its disappointed expectations about the plea and sentence — an incarceration difference of one year.
It is difficult for this court to conceptualize that the interests and expectations of trial courts and those of prosecutors could be so diametrically opposed that plea bargaining would come to an end should the District Attorney’s applications to withdraw be put to a rigorous test. Ideally, both have the well-being of society as a whole as their foremost concern. Yet, it is the proper exercise of judicial discretion at sentencing that most provide “the final ingredient in the system of checks and balances,”[4] for full integrity to be maintained.
Accordingly, the People’s application is denied in all respects.

. The court notes that a reading of case law pertaining to the importance of a sentence meted out only after independent judicial scrutiny, in conjunction with the principle that sentencing is a critical stage of a criminal proceeding where defendant is entitled to effective assistance of counsel (Gardner v Florida, 430 US 349, 358) illustrates a necessity for postplea investigation and advocacy by defense counsel and the prosecution alike.

. The rights waived by a defendant upon a plea of guilty were enumerated by Justice Douglas in his concurring opinion in Santobello v New York (404 US 257, 264) “a guilty plea is a serious and sobering occasion inasmuch as it constitutes a waiver of the fundamental rights to a jury trial * * * to confront one’s accusers * * * to present witnesses *** to remain silent *** and to be convicted by proof beyond all reasonable doubt”.

. We recognize that the People have a one-year period in which to move pursuant to GPL 440.40 and note that we are not penalizing that office for the two-month time period from sentence to motion. Rather, we are considering the effect on defendant given the relief requested.

. See Breitel, Controls in Criminal Law Enforcement, 27 U of Chicago L Rev 427; People v Farrar (Brief for defendant-respondent, at pp 40-41).