OPINION OF THE COURT
William D. Friedmann, J.
Can a sentencing court impose a sentence greater than that bargained for, when the plea agreement contains a sentence increase provision, which was triggered by defendant’s failure to appear at the scheduled sentence?
the facts
This question was considered in the following factual context:
As the result of an armed robbery (sawed-off rifle) at a McDonald’s Restaurant, defendant was charged by indictment with robbery in the first degree (class B felony), criminal use of a firearm in the first degree (class B felony), robbery in the second degree (two counts; class C felony), criminal use of a firearm in the second degree (class C felony) and criminal *309 possession of stolen property in the first degree (class D felony). Following plea discussions, defendant agreed to plead guilty to the entire indictment in exchange from the court for a promised sentence of 2 to 6 years with respect to each count to run concurrently. The District Attorney was recommending a lengthier sentence. The plea allocution and agreement incorporated certain specific provisions, including (a) defendant remaining at liberty — i.e., his bail status being continued between plea and sentence, and (b) defendant appearing for sentence as scheduled. Defendant was clearly admonished on the record by both the court and the court clerk that upon his failure to appear for his scheduled sentence, he would be sentenced to the maximum sentence, under applicable law, which was stated as being up to 25 years’ imprisonment.
Defendant failed to appear for sentence. His bail was forfeited and a warrant was ordered for his arrest. More than a year later, defendant was picked up on the arrest warrant and his sentence was rescheduled.
On the sentence date, the defendant was given an opportunity to explain his absence of approximately 13 months. He failed to give a reasonable explanation except that his mother had been ill.
THE GREATER SENTENCE
Upon sentencing, this court determined that pursuant to the provisions of the plea discussions and agreement, and the defendant’s deliberate breach of the provision as to returning for sentence, that defendant would be sentenced to 12 Vi to 25 years on the top counts and the balance of the terms would run concurrently. Defendant, through counsel, sought to withdraw his plea. The court refused, noting that the defendant had been clearly admonished and had breached the plea agreement by his failure to appear for sentence at the scheduled time. Sentence was then imposed over defendant’s objection and his reliance upon a recent ruling of the Appellate Division, Second Department, in People v Annunziata (105 AD2d 709 [Nov. 1984]). No postsentence application to modify the sentence was filed thereafter pursuant to CPL 440.20 (1), even though an opportunity was given to defense counsel to make such application.
DISTINGUISHING THE ANNUNZIATA RULING
This court, in imposing a sentence greater than that origi *310 nally promised adopts the position that such acceleration action was an integral part of the plea discussions and agreement and therefore is justified.
The Second Department’s decision in Annunziata (supra) sets forth certain general principles of law concerning sentencing following a defendant’s failure to appear as scheduled. "It is fundamental that the sentencing court may not impose a sentence greater than the one bargained for. without first affording an opportunity to withdraw the plea and stand trial (see People v Farrar, 52 NY2d 302; People v McConnell, 49 NY2d 340; People v Selikoff, 35 NY2d 227, cert den 419 US 1122). This is so even though defendant failed to appear for sentencing and had to be apprehended to obtain his subsequent appearance (see People v Esposito, 32 NY2d 921; People v Johnson, 48 AD2d 643).” (105 AD2d, at 709.)
Careful consideration of Annunziata, and the authority relied on therein, reveals the distinguishing absence therein of any agreed upon sentence acceleration provisions.
In Annunziata (supra), the Second Department confronted a situation where a defendant had fled the jurisdiction prior to sentencing and did not return for two years. The sentencing court, there, increased defendant’s originally promised sentence of 3 to 9 years to a term of 4 to 12 years. The Appellate Division, relying on the authorities stated above, ruled that a sentencing court may not impose a sentence greater than the one bargained for without first affording the defendant an opportunity to withdraw the plea and stand trial. However, since the indictment under which the prosecution arose was more than three years old, the court found that it would prejudice the People to allow the defendant to withdraw his plea and go to trial. Therefore, defendant’s sentence was reduced by the Appellate Division to the 3- to-9-year term originally promised by the court in the plea agreement.
Careful comparison of this proceeding in the context of Annunziata (supra) reveals that the plea negotiation, allocution and agreement here were clearly discussed, on the record, by the court, the prosecutor, the defendant and his counsel. The terms of the agreement were clearly understood and agreed to by all concerned.
This court, in conducting its plea allocutions, discussions and/or negotiations, uses a four-page plea form or checklist. Defendants are specifically informed, at various times during their allocution, as to the precise nature of the charges being *311 covered, those procedural and substantive matters being waived, and the precise consequences of any agreement. A defendant is admonished as follows: "Do you realize that by pleading guilty to the indictment this court can sentence you to imprisonment for up to (25 years)?” A defendant must affirmatively indicate his or her understanding or the plea is not taken. During the plea allocution under consideration, defendant was specifically advised: "The court will accept your plea, Mr. Adams, with the understanding that the only promise regarding sentence will be two to six years on all counts, to run concurrently with each other. If you fail to show up for sentence, I will sentence you to the maximum under law as stated before.” Defendant’s affirmative understanding was then noted.
It would therefore appear that the plea allocution, here, including the sentence acceleration provision, was clearly stated, understood and agreed upon. Being the sentence increase condition was an integral part of the plea agreement, it should stand unaffected by the Second Department’s pronouncement in Annunziata (supra).
An earlier sentence by this sentencing court, where the sentence was imposed upon an acceleration provision, triggered by defendant’s failure to appear, was recently affirmed by the Second Department "Sentence affirmed.” No opinion. (People v Maerkle, 117 AD2d 1029.) And see, the following Second Department opinions, which support the proposition that a sentencing court may properly increase a promised sentence, when a defendant fails to appear on the original sentencing date, the defendant has been forewarned at the time of the plea that the sentence will be increased upon failure to appear: People v Innes (111 AD2d 356 [May 1985]); People v Velez (106 AD2d 480 [Dec. 1984]); People v Binyard (90 AD2d 833 [Nov. 1982]).
GENERAL CONSIDERATIONS
During recent years, courts, commentators and others involved in the administration of American criminal justice, have become increasingly aware that plea discussions and plea arrangements have become prevalent and, in reality, represent one of the most important facets of criminal procedure. (United States ex rel. Rosa v Follette, 395 F2d 721, 724 [2d Cir], cert denied 393 US 892 [1968]; see also, Santobello v New York, 404 US 257, 260 [1971]; Lesley v State of Okla *312 homa, 407 F2d 543, 544 [10th Cir 1969]; Westen and Westin, A Constitutional Law of Remedies for Broken Plea Bargains, 66 Cal L Rev 471 [May 1978].)
Any fair analysis of the disposition of criminal litigation will indicate that a large majority of criminal cases are terminated by guilty pleas and that a vast number of these dispositions result from plea negotiations or discussions resulting in agreements between the prosecution, defense counsel, the defendant and the court. (ABA Project on Minimum Standards for Criminal Justice, Standards of Pleas of Guilty § 3.1 [a] [Approved Draft 1968]; see also, background material in Note, The Legitimation of Plea Bargaining: Remedies for Broken Promises, 11 Am Crim L Rev 771 [1973].)
Developing around this realization concerning the necessity and importance of plea dispositions is a growing body of authority and comment concerning the enforcement and/or interpretation of plea promise expectations. (Comment, Where Promises End: Prosecutorial Adherence to Sentence Recommendation Commitments in Plea Bargains, 52 U Chi L Rev 751 [summer 1985]; Note, People v Calloway: A Restriction of Remedies for Broken Plea Bargains, 70 Cal L Rev 1091 [1982]; Specific Performance of "Unfulfillable” Plea Bargains, 14 J L Reform 105 [fall 1980].)
Although most reported authority and comment concerns mainly the enforcement, and/or interpretation of plea promises by law enforcement officials or courts as they affect the rights of defendants, it seems reasonable and logical to conclude that a sentencing court’s interest in the integrity of its plea agreements should be equally considered as being a matter of high regard.
Upon any review of a promise broken by a defendant to a court in a plea agreement, the entire plea agreement or arrangement should be carefully analyzed with the following inquiries, among others, being examined:
(a) Was the acceleration provision an integral part of the plea agreement?
(b) Was it clearly communicated and understood by the defendant at the time the plea was taken?
(c) Was the acceleration provision included to offset any legitimate benefits obtained by a defendant, such as a defendant remaining at liberty, even though facing an agreed upon period of incarceration at the time of the sentence’s execution?
*313 (d) Was the acceleration provision merely an isolated threat to assure defendant’s appearance at sentencing?
(e) Was the acceleration provision the product of judicial annoyance or vindictiveness, which would violate due process of law?
Such analysis should encompass consideration of a court’s legitimate expectations and interest in securing finality and certainty with respect to its plea agreements. It should also reflect a court’s desire to effectively control its calendars and preserve the integrity of its proceedings which involve various agencies and interested persons.
Upon good cause shown, this court has, since sentencing, been receptive to entertaining a postsentence modification application pursuant to CPL 440.20 (1).