■ In the Matter of JAY H. KISLOFF et al., Petitioners, v GEORGE D. COVINGTON et al., Respondents.—Order, Supreme Court, Bronx County (George Donald Covington, J.), entered October 23, 1987, which vacated a judgment, entered July 29, 1987 (George Donald Covington, J., at the plea; Gerald Sheindlin, J., at the sentence), convicting defendant Donald Wilson, true name Donald Willis, upon his plea of guilty, of attempted grand larceny in the third degree and sentencing him to an indeterminate term of 1½ to 3 years in prison, and which reinstated the original charges contained in the indictment, reversed, on the law and the facts, without costs, the order of October 23, 1987 vacated, the respondents prohibited from pursuing further criminal proceedings on the original felony charges contained in the indictment, the judgment of July 29, 1987 reinstated and the matter remanded for resentencing of petitioner Wilson as a misdemeanor offender. The cross motion insofar as it seeks to dismiss the petition as to defendant Wilson is denied.

The cross motion, insofar as it seeks to dismiss the petition as to Kevin Burke, true name Burnice Campbell, is granted, without costs, without prejudice to a renewal of the petition which shall include the minutes and order of November 24, 1987 where, it is alleged, on information and belief, the original charges were reinstated against said defendant.

This is a proceeding brought pursuant to CPLR article 78 to prohibit respondent Covington, a Justice of the Supreme Court, Bronx County, from vacating petitioners' convictions and the sentences imposed thereon in violation of CPL article 440, and to prohibit respondents Covington, J., and Paul Gentile, District Attorney, Bronx County, from further prosecution of the petitioners on felony charges.

On July 7, 1987 petitioners pleaded guilty to attempted grand larceny in the third degree. All parties apparently thought that defendants were pleading guilty to an E felony, since grand larceny in the third degree is a D felony (Penal Law § 155.35). Accordingly, defendant Wilson was sentenced as a predicate felon to 1½ to 3 years in prison.

Attempted grand larceny in the third degree became a D felony on November 1, 1986. At the time of the commission of the acts alleged in the indictment, May 14, 1986, grand larceny in the third degree was an E felony and attempted grand larceny in the third degree an A misdemeanor (Penal Law § 155.30). Thus, defendant Wilson was improperly sentenced to felony time, that is 1½ to 3 years in prison.

Petitioner Wilson commenced his sentence. Following the discovery of the error, the trial court vacated the sentence and conviction and reinstated the original felony charges. On February 23, 1988 this court granted a stay of the prosecution pending determination of this article 78 proceeding.

Petitioners have properly sought redress through a writ of prohibition where the claim is that a fundamental constitutional right, i.e., the right against double jeopardy, is involved, and the harm caused could not be adequately redressed through ordinary channels of appeal. (*Matter of Rush v Mordue,* 68 NY2d 348, 354 [1986].) In *Matter of Campbell v Pesce* (60 NY2d 165 [1983]), where a trial court had vacated a defendant's plea and sentence, and had reinstated the charges in the criminal indictment, a writ of prohibition was found to be a proper remedy.

Here the trial court erred in vacating the plea and reinstating the original charges in the indictment. "After sentence has commenced, a court which has accepted a plea in violation

of the Criminal Procedure Law may not vacate the illegal plea and reinstate the original charges" *(Matter of Campbell v Pesce, supra,* at 167). There being no basis for the court's vacatur of defendants' pleas, the original pleas to the A misdemeanor must be reinstated and the sentences conformed thereto. Once the sentences had commenced, any further prosecution of this matter was barred by the double jeopardy provisions of the State and Federal Constitutions *(Matter of Campbell v Pesce, supra,* at 169). Concur—Kupferman, J. P., Rosenberger and Smith, JJ.

Kassal, J., concurs on constraint of *Matter of Campbell v Pesce* (60 NY2d 165).

Ross, J., dissents in a memorandum as follows: I dissent. Therefore, I would deny the CPLR article 78 petition of petitioners Messrs. Donald Wilson, whose true name is Donald Willis, and Kevin Burke, whose true name is Burnice Campbell, and grant the cross motion of the respondent District Attorney (DA), Bronx County, to dismiss.

By indictment number 2387, filed on June 6, 1986, a Bronx County Grand Jury charged that defendants Messrs. Donald Wilson (Mr. Wilson) and Kevin Burke (Mr. Burke), while acting in concert, on May 14, 1986, committed the crimes of robbery in the second degree (Penal Law § 160.10 [two counts]), assault in the second degree (Penal Law § 120.05), and grand larceny in the third degree (Penal Law § 155.35). My examination of this four-count indictment indicates that it alleges the defendants Messrs. Wilson and Burke forcibly stole from Ms. Sandra Ortiz (Ms. Ortiz) an unspecified amount of United States currency and food coupons.

Following indictment, arraignment, and after consulting with counsel, defendants Messrs. Wilson and Burke (defendants), on July 7, 1987, withdrew their pleas of not guilty, and each pleaded guilty to the crime of attempted grand larceny in the third degree (Penal Law §§ 110.00, 155.35) in satisfaction of the indictment.

After reviewing the transcripts of the plea proceedings of July 7, 1987, I find that, in substance, defendants pleaded guilty, with the understanding that the crime of attempted grand larceny in the third degree was a class E felony, and, that, in consideration of their pleas, they would be sentenced, as predicate felons, to indeterminate prison terms of 1½ to 3 years. At page 2 of an affidavit, dated March 4, 1988, by an Assistant District Attorney (ADA), which was submitted in support of the respondent DA's cross motion, the ADA stated,

in pertinent part, "[T]his plea and sentence agreement was acceptable to the People for several reasons. A plea to a class E felony would constitute a second felony conviction for each petitioner, permitting a sentence of one and one-half to three years to be imposed * * * The plea also enabled the prosecution to obtain a conviction without incurring the expense of transporting the complainant [Ms. Ortiz] from Puerto Rico, where she had moved after the crime".

On July 29, 1987, defendants, with their consent, were sentenced by Bronx County Supreme Court Justice Gerald Sheindlin (Justice Sheindlin), in place of Bronx County Supreme Court Justice George D. Covington (Justice Covington), who had taken the pleas. Accordingly, Justice Sheindlin, in conformity with the plea negotiation, mentioned *supra,* sentenced each defendant, as a second felony offender, to an indeterminate prison term of 1½ to 3 years.

Thereafter, in September 1987, the New York State Department of Correctional Services discovered that the defendants had been illegally sentenced to State prison, and, as a result, returned them to the City of New York Department of Correction, which, in turn, remanded the defendants to the Supreme Court to correct the error.

Subsequently, on October 23, 1987, defendant Mr. Wilson, as well as Mr. Jay B. Kisloff (Mr. Kisloff), his counsel, and, an ADA appeared before Justice Covington to resolve the problem of defendants' sentences. Defendant Mr. Burke was not present at the October 23rd proceeding, due to the illness of Mr. Patrick Watts (Mr. Watts), Mr. Burke's counsel.

My review of the transcript of the October 23, 1987 proceeding indicates that, due to a change in the law, all of the parties—defendants Messrs. Wilson and Burke, their counsel, the People, and the court—had made a mutual mistake of fact concerning the guilty plea. While all of the parties believed defendants had each pleaded guilty to a class E felony, in fact, defendants Messrs. Wilson and Burke had actually pleaded guilty to the class A misdemeanor crime of attempted grand larceny in the fourth degree (Penal Law §§ 110.00, 155.30).

With all due respect to the majority, they understate the significance of what had occurred, at the time the pleas were entered, when they state (at 320), "All parties apparently thought that defendants were pleading guilty to an E felony". My review of the record indicates the parties did not apparently misunderstand the effect of the pleas, they absolutely misunderstood the effect, since all parties admit a mutual

mistake of fact had occurred, and they so admitted this in the transcript of the October 23, 1987 proceeding. In fact, Mr. Kisloff, who was defendant Wilson's counsel, stated, in pertinent part, "it is clear that it was a mutual mistake."

In contracts "the term 'mutual mistake' is one wherein * * * all parties to a bilateral transaction share the same erroneous belief and their acts do not in fact accomplish their mutual intent" (21 NY Jur 2d, Contracts, § 121, at 528). Although the Court of Appeals held in *People v Selikoff* (35 NY2d 227, 238 [1974], *cert denied* 419 US 1122 [1975]) that the "[a]pplication to plea negotiations of contract law is incongruous" nevertheless, the Court of Appeals in *People v McConnell* (49 NY2d 340, 349 [1980]) applied the contract remedy of specific performance to enforce a plea negotiation "as a matter of essential fairness". Therefore, based upon the holding in *People v McConnell (supra,* at 349), I would apply the doctrine of mutual mistake to the instant plea negotiation "as a matter of essential fairness".

As mentioned *supra,* the law has changed. In 1986 the Legislature amended (L 1986, ch 515) the larceny article, so that, *inter alia,* "The [crimes previously] denominated as Grand Larceny in the First, Second and Third Degrees [are now] redenominated as Grand Larceny in the Second, Third and Fourth Degrees and the monetary standards have been raised to reflect the effects of inflation on these lower level offenses" (mem of State Exec Dept, 1986 McKinney's Session Laws of NY, at 2960).

In view of the fact that this amendment to the larceny article took effect on November 1, 1986 *(see,* L 1986, ch 515), it influenced the legal effect to be accorded the pleas made by defendants Messrs. Wilson and Burke on July 7, 1987, which date was *after* the effective date of the amendment. Although those pleas were intended by the parties to be a grand larceny crime, which was a class E felony, in fact, the pleas were actually made to the crime of attempted grand larceny in the fourth degree, a class A misdemeanor, since those pleas made out the elements of that crime.

Penal Law § 155.30 (5), in pertinent part, states that the completed crime of grand larceny in the fourth degree, which is a class E felony, is committed when "[t]he property, regardless of its nature and value, is taken from the person of another". When those elements of Penal Law § 155.30 (5) which are the taking of property, regardless of its nature and value, from the person of another, are compared to the July 7, 1987 pleas of the defendants, the inevitable conclusion is that

the defendants unequivocally pleaded guilty to the crime of attempted grand larceny in the fourth degree, a class A misdemeanor.

Specifically, my review of the July 7th transcripts of the pleas of defendants Messrs. Wilson and Burke indicates that, in their own words, both defendants admitted committing the attempted crime of grand larceny in the fourth degree, since they separately acknowledged attempting to take an unspecified amount of property, consisting of United States currency and food coupons, from the person of victim Ms. Ortiz on May 14, 1986, at Fordham Road, in Bronx County.

I find, upon examination of the transcript of the October 23, 1987 proceeding, mentioned *supra,* that the primary purpose of that proceeding was to cure the error of the mutual mistake, discussed *supra,* so that the original intent of the parties could be carried out.

Accordingly, both the court and People were prepared to carry out the terms of the original plea negotiation of July 7, 1987, which were that, in exchange for the pleas of defendants Messrs. Wilson and Burke to a class E felony, in satisfaction of the indictment, they would be sentenced as promised, based upon their status as predicate felons, to prison terms of 1½ to 3 years.

Since the law had changed, as discussed *supra,* in order for that plea negotiation to be implemented, Justice Covington pointed out, the defendants "would be required to allocute to the completed crime of Grand Larceny in the fourth degree under the existing law. Grand Larceny in the fourth degree is an E felony * * * The intent was to plead to an E felony". Furthermore, Justice Covington advised defendant Mr. Wilson, who was, as mentioned *supra,* the only defendant before him on October 23, 1987, that if defendant Mr. Wilson pleaded to the completed crime of grand larceny in the fourth degree, he would impose the promised sentence of 1½ to 3 years, and make that sentence retroactive, so that defendant Mr. Wilson would get full credit for all of the prison time he had already served.

Finally, Justice Covington explained to defendant Mr. Wilson that, if he did not replead, the only alternative the court had was to vacate the July 7, 1987 plea of defendant Mr. Wilson, and schedule the matter for trial.

However, defendant Mr. Wilson, who based upon his predicate felony status can be presumed to be familiar with the operation of the criminal justice system, refused to withdraw

his plea, and demanded to be resentenced, upon the basis of a class A misdemeanor. Pursuant to Penal Law §§ 70.15 and 70.20, the maximum sentence defendant Mr. Wilson could receive, if sentenced upon the basis of a class A misdemeanor, is a definite one-year term.

In response to defendant Mr. Wilson's adamantly expressed position, Justice Covington stated, in pertinent part:

"I can plead you to an E felony and give you the same time retroactive that you received. The only thing being that you would be pleading to a legitimate situation * * * And if you are now insisting on being sentenced to an attempted grand larceny—you have already been sentenced to that and that has been found to be an illegal sentence and I can not repeat an illegal act so it is nonsensical for you to say to me I want to plead * * * to the same thing I pleaded to because that is the error primarily because the legislature had changed the effective date of the law so I can't do that, Mr. Wilson * * *

"I will say one other thing to you. It was never the intent of the court to sentence you to one year in jail. It was never the intent of the court to sentence you * * * [to] a misdemeanor * * *

"If you still want the one and a half to three then you would have to plead under grand larceny 4 as a completed act. If you don't want to do that, my only option is to give you back your plea".

Following Justice Covington's statement, quoted *supra,* defendant Mr. Wilson turned mute and refused to say anything more to the court. Therefore, in the face of defendant Mr. Wilson's self-imposed silence, Justice Covington explained, in pertinent part:

"Either you [Mr. Wilson] tell me now * * * [what] you wish to do or I will do it for you * * *

"Can you tell me now what it is your wish to do rather than stand mute * * *

"Let me just do this then * * * There is no advantage here that you are going to find. There is no windfall flowing to you for a mistake and that what I consider a mutual mistake; none whatsoever.

"The way I can * * * straighten the record out from a mutual mistake is to put the People * * * back in the position [they were] in and put you back in the position you were in so that no one is hurt".

Accordingly, since defendant Mr. Wilson continued to refuse to utter a word, Justice Covington vacated defendant Mr.

Wilson's plea of guilty, made on July 7, 1987, reinstated the indictment, with all of its counts, entered a plea of not guilty on behalf of defendant Mr. Wilson to the indictment, and adjourned the matter to November 24, 1987.

Significantly, at no time during the October 23, 1987 proceeding did Mr. Wilson, himself, contend that no mistake had occurred concerning the plea and sentence.

Thereafter, on November 24, 1987, when defendant Mr. Burke, who was was represented by Mr. Watts, refused to replead to a valid class E felony, Justice Covington also vacated defendant Mr. Burke's plea of guilty, made on July 7, 1987, reinstated the indictment, and restored the matter to the Trial Calendar.

Subsequently, the cases of defendants Messrs. Wilson and Burke were adjourned to December 8, 1987, and then to January 12, 1988.

On January 12, 1988, the People, in order to schedule victim Ms. Ortiz' return to New York from Puerto Rico to testify at trial, requested the court to set a firm trial date, and February 16, 1988 was so designated. The People, on February 16, 1988, informed defendants Messrs. Wilson and Burke that Ms. Ortiz was in New York at the People's expense, and the People were ready to go to trial. Thereafter, the date for trial was adjourned to February 17, to February 18, to February 22, and to February 23, 1988.

Soon after learning that victim Ms. Ortiz was going to testify against defendants at trial, counsel for defendants informed the People, on February 17, 1988, which was almost three months after their pleas had been vacated, that they intended to institute a CPLR article 78 proceeding. Subsequently, defendants instituted such a proceeding to compel respondent Justice Covington to resentence them as misdemeanor offenders, and to prohibit respondents Justice Covington and the DA from trying them on the felony charges contained in the indictment. The respondent DA cross-moved to dismiss, upon the basis that the petition of petitioners Wilson and Burke did not state a cause of action.

Upon the basis that one of the parties to the mutual mistake was the court, and Justice Covington, as quoted *supra,* explicitly told defendant Mr. Wilson "It was never the *intent* of the Court to sentence you to one year in jail. It was never the *intent* of the Court to sentence you * * * [to] a misdemeanor" (emphasis added), I find that, when Justice Covington vacated the defendants' pleas, he was simply using

his inherent power to conform the record to reflect the truth *(see, People v Minaya,* 54 NY2d 360, 364 [1981], *cert denied* 455 US 1024 [1982]). In *People v Minaya (supra,* at 364), now Chief Judge Wachtler wrote for a majority of the court: "It is well settled that courts possess 'inherent power to correct their records, where the correction * * * is made in order to conform the record to the truth' *(Bohlen v Metropolitan El. Ry. Co.,* 121 NY 546, 550-551). *This power exists in criminal as well as civil cases"* (emphasis supplied).

The majority rely on the case of *Matter of Campbell v Pesce* (60 NY2d 165 [1983]) to support their position that Justice Covington did not have the power to vacate the pleas, after the defendants had begun serving their sentences, since it would violate their double jeopardy rights under the State and Federal Constitutions.

An examination of the Court of Appeals opinion in *Matter of Campbell v Pesce (supra)* indicates its holding is not relevant to the instant case.

In pertinent part, the Court of Appeals stated in *Matter of Campbell v Pesce (supra,* at 167): "After sentence has commenced, a court which has accepted a plea in violation of the Criminal Procedure Law may not vacate the illegal plea and reinstate the original charges".

*Matter of Campbell v Pesce (supra)* involved an application by the People, after sentence had commenced, to vacate defendant's plea to the misdemeanor crime of petit larceny, upon the basis the People, in violation of CPL 180.50, had reduced the felony charge of an armed felony to a misdemeanor. However, in the instant case, as discussed *supra,* the error of the mutual mistake of fact concerned a legislative change in the Penal Law and not the Criminal Procedure Law, and the vacating of the pleas was done to correct a court error, and was not done in response to an application by the People.

Moreover, my examination of the opinion in *Matter of Campbell v Pesce (supra)* clearly indicates that it does not, after a defendant has commenced serving a sentence, prohibit a court from using its inherent power to correct its own error. Significantly, Judge Kaye wrote for a unanimous Court in *Matter of Campbell v Pesce (supra,* at 169), "In * * * *Minaya [supra]* * * * the corrections made after sentencing not only were evident from the record *but also fully comported with the expectation of the court, the prosecutor and the defendant at the time sentence was imposed"* (emphasis added).

Another important factor that distinguishes the holding in *Matter of Campbell v Pesce (supra)* from the instant case is that there was no claim in *Matter of Campbell v Pesce (supra,* at 168) that the sentence was illegal, while in the instant case all of the parties *concede* that the sentence imposed was illegal.

In conclusion, it is undisputed that the intention of all parties was that defendants plead guilty to a class E felony. Therefore, the correction of the mutual mistake by the trial court was an appropriate exercise of its inherent power " 'to conform the record to the truth' " *(People v Minaya, supra,* at 364).

Accordingly, I would deny the petition and grant the cross motion to dismiss it.