OPINION OF THE COURT
Kenneth K. Rohl, J.
Defendant Dale D’Amico (D’Amico) was charged with class *732 A-I felonies of criminal sale of a controlled substance in the first degree and criminal possession of a controlled substance in the first degree as the result of the sale of some 17 ounces of cocaine to undercover Suffolk County Detective Dennis Wustenhoff.
On December 4, 1989, after extended negotiations a proposed disposition by plea was presented for court approval. Agreed terms included defendant’s pleading guilty to a single class A-II felony of criminal sale of a controlled substance in the second degree and the People’s recommendation of lifetime probation (in lieu of mandatory imprisonment) upon defendant’s cooperation in other narcotic investigations. Failure to cooperate would result in an alternative recommendation of imprisonment for a minimum of three years and a maximum of life. The plea would terminate the prosecution (CPL 1.20 [13]; see, Matter of Gunning v Codd, 49 NY2d 495). The court’s sanction was given.
However, the extraordinary circumstances surrounding D’Amico’s allocution and subsequent events have caused him to move for an order declaring that no plea ever, in fact, occurred.
The December 4 proceeding commenced with defendant’s attorney stating:
"we would ask Your Honor to listen to the allocution. I freely ask that you ask my client any questions that you want, that the district attorney might have, I’m going to ask Your Honor not to accept the plea today. * * * The law of the State requires a remission to * * * prison, a remand on any A Felony plea. If he’s remanded into prison obviously he can’t cooperate. We ask Your Honor to hold back on your acceptance of the plea.
"And since we are being open and candid about what’s going on, to play it safe, at the end of these proceedings, I’m going to ask Your Honor to seal these proceedings”.
D’Amico then averred that he had discussed the terms of the negotiated plea with his attorney; he understood it was an admission of his committing the crime of criminal sale of a controlled substance in the second degree with the resultant waiver of his right to a jury trial; and it was voluntary and not coerced. The specific terms of the agreement were entered on the record, including the alternative promises of lifetime probation if he cooperated or imprisonment sans cooperation. When asked if any other promises had been made to induce *733 the plea he responded, "No, Sir.” Defendant was placed under oath and allocuted:
"[da]: Mr. D’Amico, I direct your attention to April 11th of 1989, at approximately 3:34 p.m. On that date and time you were at the King Kullen parking lot at the Gardiner Manor Mall in Sunrise Highway, Bay Shore, Suffolk County, the State of New York:
"the defendant: Yes.
"[da]: On that date and time was a person named Michael Fisnar (phonetic spelling) with you?
"the defendant: Yes.
"[da]: Did you and Mr. Fisnar meet with persons that you now know to be undercover Suffolk County Police Officers? "the defendant: Yes.
"[da]: Did you, while acting in concert with Michael Fisnar, sell the undercover Suffolk County Police Officers a quantity of cocaine?
"the defendant: Yes.
"[da]: Did you know what you were selling was cocaine?
"the defendant: Yes.
"[da]: Did you know that it was unlawful to sell cocaine? "the defendant: Yes.
[The weight of the cocaine was stipulated to be in excess of the two ounces.]
"the court: The Court is satisfied.
"Mr. D’Amico, in the presence of your lawyer I’m going to ask: How do you plead to the A-2 Felony of Criminal Sale of a Controlled Substance in the Second Degree, as to Count 7, in satisfaction of all of the charges under Indictment 891/89, insofar as, in effect, are you guilty or not guilty?
"the defendant: Guilty.
"the court: The Court is satisfied. I will accept that plea and order the plea be recorded. I am going to order a probation report.”
Acceptance automatically resulted in entry of defendant’s conviction (CPL 1.20 [13]) and required his immediate remand to jail pending sentencing (CPL 530.40 [3]). Because of the "Catch 22” into which he had been placed — how could he cooperate in narcotics investigations while incarcerated, yet remain out of jail in light of the statutory mandate — D’Amico asked the court to withhold entry of his conviction until *734 immediately prior to the sentencing scheduled for January 9, 1990.1
On that date, the Assistant District Attorney advised defendant that his cooperation was insufficient and would not result in the recommendation of lifetime probation. D’Amico requested and was granted an adjournment. On January 18, 1990, defendant requested an additional adjournment of his sentence to put his affairs in order. The court acceded.
On February 15, 1990, Detective Wustenhoff, the complaining witness, was murdered.
On March 15, 1990, the adjourned date, D’Amico stated that he wished a trial. Seeking now to escape his admitted criminal liability by putting the People to their proof with full knowledge that their key witness had been murdered during the interim. Simply, defendant claims that he never pleaded.
On the other hand, the People contend that a plea has, in fact, occurred within the meaning of CPL 1.20 (10) and that D’Amico is bound by the negotiated terms.
This case implicates the interrelationship between immediate mandatory incarceration for convicted A-II felons (CPL 530.40 [3]), the need not to incarcerate criminals who will turn coat and aid authorities in criminal investigations (Penal Law § 65.00 [1] [b]); and fundamental policy of our State to expeditiously resolve criminal cases while insuring substantial justice to both defendants and citizens alike (CPL art 220).
At issue is when does a plea occur and a defendant become bound by its negotiated terms when one of those includes withholding entry of the conviction until immediately prior to sentencing.
It is not and should not be the role of the court to engage in fictions or technical hoodwinking to accomplish justice. Yet, it has been forced to do so by the incongruities of CPL 530.40 (3) and Penal Law § 65.00 (1) (b) in the case of class A-II narcotics convictions. Accordingly, the court, today, holds that a negotiated plea, which includes the withholding of final entry of conviction at the behest of and the defendant’s benefit is a completed plea within the meaning of CPL 1.20 (10) and becomes enforceable against that defendant from the time of the recording of his allocution and cannot be disavowed except *735 for good cause and a showing that disavowal will not detrimentally affect the People who relied on the agreement.
*734 1. While the colloquy on December 4 is in terms of acceptance and nonacceptance of the plea, it is clear that what all parties desired on that date was delaying the formality of entering an A-II conviction which would trigger automatic incarceration under CPL 530.40 (3).
*735 A plea bargain is the "process whereby the accused and the prosecutor in a criminal case work out a mutually satisfactory disposition of the case subject to court approval” (Black’s Law Dictionary 1037 [5th ed]). It is intended to end criminal proceedings and not be "a gateway to further litigation” (People v Taylor, 65 NY2d 1, 5). The allocution recorded in open court is defendant’s overt act signaling his "intention not to litigate the question of his guilt” and the surrendering of his right to a jury trial (People v Lynn, 28 NY2d 196, 201). The plea effectively relinquishes defendant’s right to put the People to their proof or to challenge that proof (People v Lee, 58 NY2d 491). It further insures the "swift and certain punishment of law violators with sentences tailored to the circumstances of the case at hand” (People v Seaberg, 74 NY2d 1, 7; Santobello v New York, 404 US 257).
It is well established that either a defendant or a prosecutor who has detrimentally relied upon a plea agreement has the right to its specific performance. (People v McConnell, 49 NY2d 340; People v Danny G, 61 NY2d 169, 171 ["A defendant who has placed himself in a 'no return’ position by carrying out his obligations under a plea agreement is entitled to specific performance of that agreement in cases where no significant additional information bearing upon the appropriateness of the plea bargain later comes to the court’s attention”]; People v White, 144 AD2d 711; People v Sumner, 137 AD2d 891; People v Annunziata, 105 AD2d 709; Matter of Gold v Booth, 79 AD2d 691, lv denied 52 NY2d 706, cert denied sub nom. Sapio v Gold, 454 US 840; People v Parra, 57 AD2d 964; People v Johnson, 48 AD2d 643 [specific performance, not vacation of the plea, inures to the benefit of the People when the indictment becomes stale and it would be difficult if not impossible for the prosecution to obtain a conviction]; People v Esposito, 32 NY2d 921, revg 40 AD2d 801; People v Forrest, 111 Misc 2d 800 [People entitled to specific performance of plea where time delay caused by defendant results in prosecutions being unable to locate necessary witnesses]; People v Jones, 44 NY2d 76, cert denied 439 US 846 [specific performance of plea ordered against defendant where the complaining witness dies].)
A plea means "the occasion upon which a defendant enters such a plea to an accusatory instrument” (CPL 1.20 [10]). It is complete and binding when (1) its terms represent the "volun *736 tary and intelligent choice among the alternative courses of action open to the defendant” (North Carolina v Alford, 400 US 25, 31; People v Coleman, 135 AD2d 646; People v Dexter, 135 AD2d 648) and (2) the defendant allocutes to facts sufficient to establish his commission of the crime, i.e., he knowingly, intelligently and voluntarily acknowledges his guilt (People , v Lopez, 71 NY2d 662)[2] and the court determines that it was, in fact, knowing, intelligent and voluntary (see, People v Harris, 61 NY2d 9). It is not a defendant’s mere mouthing of the word "guilty”, but his statement of complicity in the crime which controls (cf., People v Bellis, 78 AD2d 1014). Formal entry of the plea then operates as the conviction (CPL 1.20 [13]) prerequisite to sentencing. Delay in entry at a defendant’s request is chargeable against that individual and does not effect the conclusiveness of the plea or the enforceability of the bargain. (See, People v Amendolara, 135 Misc 2d 170.)
In Amendolara (supra), Mr. Justice Rothwax, in the course of deciding a speedy trial motion and upon facts remarkably similar to those at bar, stated, in dicta, that he believed an enforceable plea exists where a court is specifically asked by a defendant to withhold final acceptance of a plea to circumvent the mandatory immediate incarceration of CPL 530.40 (3).
In the instant case, the record unequivocally establishes that the terms of the plea, including the alternative sentence promises, were negotiated by defendant to his benefit. His allocution unquestionably establishes his guilt and that it was the knowing product of his free and intelligent choice. Withholding the entry of conviction and adjournments of the sentencing date to give D’Amico additional time to merit lifetime probation were at his request and for his benefit. But for Detective WustenhofFs untimely murder, this specific application would not and could not have been made.
Defendant’s claim of innocence and that he admitted guilt only because of the "possibility of lifetime probation rather than incarceration of 15 years to life in prison as a minimum sentence” and that he was unaware of the alternative sentence promise is belied by his allocution.
The paradox created by CPL 530.40 (3) and Penal Law *737 §65.00 (1) (b) for class A-II drug felonies needs legislative resolution. The ultimate goal of destroying narcotics trade can only be enhanced when those knowledgeable of its internal workings will opt to aid the police. These statutes must be brought to final reconciliation so that the courts will no longer be forced to use artifice to achieve the laudable goals served by plea bargaining.
Defendant’s application is in all respects denied. Defendant pleaded guilty on December 4, 1989 within the meaning of CPL 1.20 (10) and in the absence of any compelling reason or circumstance the court will not undo that plea.
This memorandum shall constitute the order of this court and entry of defendant’s conviction.

. A defendant, advised that his statement of the facts of the crime charged is not consistent with the evidence, may nevertheless plead guilty, for example to avoid the risk of trial upon the more serious crime, and without, in that instance, formal allocution (People v Serrano, 15 NY2d 304).