People v West (2023 NY Slip Op 03932)

People v West

2023 NY Slip Op 03932

Decided on July 26, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 26, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
CHERYL E. CHAMBERS
JOSEPH J. MALTESE
DEBORAH A. DOWLING, JJ.

2018-09725
 (Ind. No. 1194/17)

[*1]The People of the State of New York, respondent,
v
Timothy West, appellant.

Patricia Pazner, New York, NY (Denise A. Corsi of counsel), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, Ellen C. Abbot, and Charles T. Pollak of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Gene Lopez, J.), rendered July 25, 2018, convicting him of burglary in the second degree (four counts), grand larceny in the third degree, criminal possession of a weapon in the third degree, petit larceny (four counts), criminal mischief in the fourth degree (two counts), criminal possession of stolen property in the fifth degree (ten counts), and unlawful sale, possession, or use of an imitation pistol, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, without a hearing, of those branches of the defendant's omnibus motion which were to controvert a search warrant and to suppress physical evidence seized in the execution thereof.
ORDERED that the judgment is affirmed.
The defendant was charged in an indictment with, inter alia, four counts of burglary in the second degree, based upon the recovery by police, upon the execution of a search warrant, of various items found exclusively in the defendant's possession in his bedroom located in a group home for mentally ill adults. Those items were previously identified by the victims as having been stolen from their respective homes. The defendant filed an omnibus motion, inter alia, to controvert the search warrant and to suppress physical evidence seized in the execution thereof. The Supreme Court denied, without a hearing, those branches of the defendant's omnibus motion. The defendant thereafter was convicted of, inter alia, four counts of burglary in the second degree, upon a jury verdict.
Preliminarily, the specific arguments the defendant now makes to support his contention that the Supreme Court erred in denying those branches of his omnibus motion which were to controvert the search warrant and to suppress physical evidence seized in execution thereof are unpreserved for appellate review, since they were not raised before the court (see CPL 470.05[2]; People v Cardona, 207 AD3d 737; People v Rose, 207 AD3d 664, 665). In any event, the court properly concluded that the search warrant was supported by probable cause (see People v Gordon, 36 NY3d 420, 425; People v Rivera, 210 AD3d 805).
The defendant's challenge to the legal sufficiency of the evidence supporting his convictions of burglary in the second degree as to the so-called "Weiss" burglaries is unpreserved [*2]for appellate review (see CPL 470.05; People v Cruz, 137 AD3d 1158, 1159). In any event, viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt of burglary in the second degree as to the so-called "Weiss" burglaries. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383; People v Bleakley, 69 NY2d 490). Upon reviewing the record here, we are satisfied that the verdict of guilt as to those convictions was not against the weight of the evidence (see People v Romero, 7 NY3d 633).
The defendant's contention that the Supreme Court improvidently exercised its discretion in permitting non-eyewitnesses to identify him as the individual depicted in a certain home surveillance video, without evidence that the defendant had altered his appearance, is unpreserved for appellate review (see CPL 470.05; People v Franzese, 189 AD3d 1068). In any event, his contention lacks merit since, under the circumstances, there was some basis for concluding that the non-eyewitnesses, who were the defendant's parole officers who knew him from their numerous face-to-face parole meetings with him, were more likely than the jury to correctly determine whether he was depicted in the video (see People v Franzese, 154 AD3d 706, 707; People v Daniels, 140 AD3d 1083, 1084).
Further, defense counsel's failure to raise certain objections we have determined are unpreserved for appellate review did not amount to ineffective assistance of counsel, since "an attorney is not deemed ineffective for failing to pursue an argument that had little or no chance of success" (People v Ennis, 11 NY3d 403, 415; see People v Gainer, 207 AD3d 745, 747).
Contrary to the defendant's contention, the Supreme Court's imposition of consecutive, rather than concurrent, sentences on two of his four burglary convictions, resulting in an aggregate indeterminate term of imprisonment of 34 years to life, was not unduly harsh or excessive under the circumstances (see People v Black, 110 AD3d 569, 570). We do not share our dissenting colleague's view that the court's sentence reflects an implicit conclusion that the defendant "is beyond all hope of rehabilitation." Rather, the sentencing transcript reflects that the court expressly took into account the overwhelming evidence of the defendant's guilt, the harm caused to the complainants and to their families, the fact that consecutive sentences would have been permissible on all four of the burglary convictions, the defendant's age and prior history of larcenous crimes, including burglary, the fact that his prior periods of incarceration had not served as a deterrent to the defendant, and the fact that he had committed the instant offenses while on parole supervision. As to the issue of the harm caused to the complainants, while it is true that, fortunately, the complainants were not home during the burglaries and did not physically encounter the defendant, they nevertheless described the lasting feelings of insecurity, vulnerability, and violation that they and their children experienced in their own homes after the burglaries, as well as the significant sentimental value of the items that were stolen. The court properly took into account the lasting emotional and psychological harm to the complainants when it imposed the defendant's sentence.
We also disagree with our dissenting colleague that a reduction in the defendant's sentence is warranted due to the defendant's mental health condition. While it is undisputed that the defendant qualified for some level of mental health services, and, as the trial testimony reflected, among other things, that the defendant's former parole officer was assigned to parolees that had a mental health diagnosis, the nature and scope of the defendant's mental health condition was never probed at trial or at sentencing. The diagnoses of schizophrenia and bipolar mood disorder were self-reported by the defendant to the Department of Probation, but no medical records were introduced to corroborate the defendant's statements. Moreover, at sentencing, the People introduced an audio recording of a phone call made by the defendant on June 21, 2018, while he was incarcerated during the pendency of this matter, in which he admitted to having previously lied about having auditory hallucinations in order to acquire supportive housing. His reference during that same phone call to having been previously prescribed anti-depressants, which he voluntarily discontinued taking because they caused drowsiness and weight gain, in our view does not [*3]demonstrate a mental health condition that rises to the level of a mitigating circumstance for purposes of sentencing. Furthermore, the defendant's lack of credibility was demonstrated during the trial. The Supreme Court concluded it was "obvious and transparent" that the defendant knowingly gave false testimony at trial. While the court stated that it declined to rely upon the defendant's false testimony as a factor in sentencing, the court was also in the best position to assess the demeanor of the defendant, and to determine what weight, if any, to give to the defendant's mental health condition in imposing sentence. As this Court has noted, "[a] reviewing court lacks some of the first-hand knowledge of the case that the sentencing judge is in a position to obtain, and therefore the sentencer's decision should be afforded high respect" (People v Suitte, 90 AD2d 80, 85).
For all of the foregoing reasons, the sentence imposed was not excessive (see People v Suitte, 90 AD2d 80).
The defendant's remaining contentions are unpreserved for appellate review and, in any event, without merit.
CHAMBERS, MALTESE and DOWLING, JJ., concur.
BARROS, J.P., concurs in part and dissents in part, and votes to modify the judgment, as a matter of discretion in the interest of justice, (1) by reducing the sentences imposed on each conviction of burglary in the second degree from an indeterminate term of imprisonment of 17 years to life to an indeterminate term of imprisonment of 16 years to life, and (2) by directing that all sentences imposed on the convictions of burglary in the second degree run concurrently with each other, and, as so modified, to affirm the judgment, with the following memorandum:
For the reasons set forth herein, the aggregate term of imprisonment of 34 years to life imposed upon this 34-year-old defendant is unduly harsh and severe, and should be reduced to an aggregate indeterminate term of imprisonment of 16 years to life, which is the mandatory minimum sentence that may be imposed (see Penal Law § 70.08).
"An intermediate . . . court has broad plenary power to modify a sentence that is unduly harsh or severe under the circumstances, even though the sentence may be within the permissible statutory range" (People v Delgado, 80 NY2d 780, 783; see CPL 470.15[6][b]; People v Thompson, 60 NY2d 513, 519; People v Kordish, 140 AD3d 981, 982-983). This sentencing review power "may be exercised, if the interest of justice warrants, without deference to the sentencing court" (People v Delgado, 80 NY2d at 783; People v Kordish, 140 AD3d at 982 [emphasis and internal quotation marks omitted]).
In considering whether a sentence is unduly harsh or severe under the circumstances, we exercise our discretion giving consideration to, "among other things, the crime charged, the particular circumstances of the individual before the court and the purpose of a penal sanction, i.e., societal protection, rehabilitation[,] and deterrence" (People v Farrar, 52 NY2d 302, 305; People v Kordish, 140 AD3d at 983 [internal quotation marks omitted]; People v Suitte, 90 AD2d 80, 83-84). A court should impose the "minimum amount of confinement . . . consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant" (People v Notey, 72 AD2d 279, 282-283 [internal quotation marks omitted]). "There is no place in the scheme for punishment for its own sake, the product simply of vengeance or retribution" (People v Oliver, 1 NY2d 152, 160; see Penal Law § 1.05; People v Farrar, 52 NY2d at 305; People v McConnell, 49 NY2d 340, 346).
Based on his extensive criminal history, the defendant was adjudicated a persistent violent felony offender and, thus, faced a sentencing range of between 16 and 25 years to life imprisonment on each of his convictions for burglary in the second degree (see Penal Law §§ 70.02[1][b]; 70.08[2], [3][b]). The Supreme Court sentenced the defendant to an indeterminate term of imprisonment of 17 years to life on each of those convictions. Two of those sentences were imposed to run concurrently with each other, but to run consecutively to the other two sentences, [*4]which were also imposed to run concurrently with each other, for an aggregate indeterminate term of imprisonment of 34 years to life. Since the defendant cannot even be considered for release with lifetime parole supervision until he is, at least, 68 years old, the sentence imposed is tantamount to a life sentence.
The gravity of a defendant's criminal conduct, a defendant's extensive criminal history, and the need for societal protection are already taken into consideration by the Penal Law provisions providing enhanced sentences for persistent violent felony offenders (see id. § 70.08[2], [3]); People v Howard, 120 AD3d 1259, 1261). Contrary to the determination of my colleagues, nothing in this record warranted a further enhancement of the already-enhanced minimum aggregate sentence of an indeterminate term of imprisonment of 16 years to life, followed by lifetime parole supervision.
The defendant committed daytime burglaries when no one was home, and stole items such as jewelry, fur coats, and electronics. No victim had any encounter with the defendant. Even without considering any other factors, an aggregate term of imprisonment of 34 years to life is grossly disproportionate to the harm caused by the defendant's conduct.
Considering the particular circumstances of this defendant, the presentence report reveals that the defendant has been diagnosed and treated for schizophrenia and bipolar disorder since the age of 17. As a result of mental illness, the defendant received Social Security benefits, and was admitted into a group home for people suffering from mental illness. While in pretrial detention, the defendant was admitted into St. Barnabas Hospital [FN1]. The presentence report also reveals that the defendant's father died the same year that the defendant was born, and that, due to his mother's struggle with alcoholism, the defendant lived with an aunt from ages 8-14.
Under the circumstances, an aggregate sentence of 16 years to life imprisonment would adequately protect the public while at the same time give this 34-year-old defendant with schizophrenia and bipolar disorder an opportunity to receive treatment and rehabilitation so that he can be considered by the parole board for release with lifetime parole supervision when he is 50 years old. Under the sentence imposed, as affirmed by my colleagues, any progress towards rehabilitation could not even be considered by a parole board until the defendant is at least 68 years old. In my view, the record does not justify the conclusion implicitly reached by the Supreme Court and my colleagues that this defendant is beyond all hope of rehabilitation.
Considering the relevant factors, I vote to reduce the sentence as indicated (see People v Howard, 120 AD3d 1259).
ENTER:
Maria T. Fasulo
Clerk of the Court

Footnotes

Footnote 1:I am not convinced by the People's argument that a 30-second clip of a recorded prison phone call wherein the defendant claimed that he had lied about experiencing auditory hallucinations in order to acquire supportive housing disproves that the defendant suffers from mental illness. Notably, in that same brief clip, the defendant, who was speaking at a frenetic pace, also complained of adverse effects of medications he was prescribed.